```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/12/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

EUGUENE JOSEPH LEMAY a/k/a Gene Lemay,
and JOEL LINGAT,

Defendants.

1:21-cr-573 (MKV)

**OPINION AND ORDER
DENYING MOTIONS FOR A
BILL OF PARTICULARS**

MARY KAY VYSKOCIL, United States District Judge:

Defendants Eugene Joseph Lemay and Joel Lingat are charged in a one-count[1] Superseding Indictment [ECF No. 26] with engaging in a conspiracy to defraud the Internal Revenue Service ("IRS") in violation of 18 U.S.C. § 371. The Defendants separately move this Court to direct the Government to produce a bill of particulars with respect to each Defendant. [ECF No. 49-50]. For the reasons stated herein, the Motions are denied.

## BACKGROUND

The relevant facts are taken from the Complaint [ECF No. 1] ("Compl.") and the Superseding Indictment [ECF No. 26] ("SI"). The Government alleges that, from 2010 until the end of 2016, Lingat and Lemay conspired to defraud the IRS by evading federal income and payroll taxes. *See* Compl. ¶¶ 1-2; SI ¶ 1.

Both Lingat and Lemay worked at "Company-1," a company that "provides moving and storage services." SI ¶ 2. Since 2010, Lingat was the primary bookkeeper for Company-1. Compl. ¶ 6(f). From the 1980s until 2011, Lemay was the nominal owner of Company-1,

---

[1] When filed, the Superseding Indictment also charged Defendant Lemay with two counts of tax evasion, which, on consent of the Parties, were transferred to the District of New Jersey. [ECF Nos. 43-44].

ultimately serving as its President and CEO. Compl. ¶ 6(b).[2] Lemay left Company-1 in 2011, but "continued to supervise and play a role in the management of Company-1," and throughout the time-period relevant to the conspiracy, Lemay "nominally owned" in part Company-1. Compl. at 3, 6 n.1.

Beginning in the late-1980s, Lemay "began to direct the operation of a scheme by which Company-1 evaded the assessment and payment of payroll taxes for many of the workers it employed as movers and drivers." Compl. ¶ 6(d). Under Lemay's leadership, the scheme took one of two forms. Compl. ¶ 6(e). The first form involved legitimate companies who would be paid for their labor as independent contractors, and the foremen of those companies would pay the movers directly. Compl. ¶ 6(e)(i). In the other form of the scheme, Lemay and others would create shell labor companies by asking "a close associate or family member" to sign paperwork creating the company and opening a bank account in its name. Compl. ¶ 6(e)(ii). Managers of Company-1 would then "assign" foremen and movers who worked for Company-1 to the shell company, and pay those employees through the shell company. Compl. ¶ 6(e)(ii). After a moving job on behalf of Company-1, "Company-1 bookkeepers" would create falsified invoices from the shell company and pay them, "fraudulently making it appear that the [shell companies] were independent contractors," when in reality the shell company employees were paid in cash from the shell company's accounts. Compl. ¶ 6(e)(ii).

The schemes made it appear, on paper, that labor for Company-1 was performed by independent contractors. Compl. ¶ 6(e)(iii). This allowed Company-1 to deduct the labor as an expense for purposes of its tax returns, "without withholding or paying over any payroll taxes to

---

[2] The Complaint, filed before the Superseding Indictment that charged Lemay as a co-conspirator, refers to Lemay as "CC-1" throughout. *See* Opp. at 1. The Government has confirmed that CC-1 in the Complaint refers to Lemay. Opp. at 1.

the IRS." Compl. ¶ 6(e)(iii). The shell companies further did not file required W2 and quarterly tax returns, nor did they pay payroll taxes. Compl. ¶ 6(e)(iii). Between 2010 and 2016, a total of twenty-four sham companies were set up; eleven in the names of relatives of Lemay. Compl. ¶ 6(g).

Lingat coordinated with Lemay and others to perpetrate this tax evasion scheme. Compl. ¶ 6(f). For example, on April 2, 2014, Lingat sent Lemay an e-mail with the subject "Owners of Labor Co" which listed the names of five shell companies and their nominal owner, all relatives of Lemay. Compl. ¶ 6(g)(iv). For each move purportedly assigned to a shell company, Lingat or others at his direction would prepare an invoice to be submitted for payment. Compl. ¶ 7(a)-(b). After a payment check was issued to the shell company, Lingat would deposit it in the bank account of the shell company, and prepare a check payable to cash to pay the movers. Compl. ¶ 7(c). As part of the scheme, Lingat was paid a cash bonus in a fictitious name "on an almost weekly basis for a period of years" out of the accounts of the shell companies. Compl. ¶ 7(f).

## PROCEDURAL HISTORY

On September 15, 2021, Lingat was charged in a one count indictment with conspiracy to defraud the IRS in violation of 18 U.S.C. § 371. [ECF No. 13]. Lingat plead not guilty to the one-count indictment on September 23, 2021. *See* Minute Entry dated Sept. 23, 2021. On October 20, 2021, Magistrate Judge Lehrburger unsealed the Superseding Indictment, charging Lingat and Lemay with one count of conspiracy to defraud the IRS in violation of 18 U.S.C. § 371, and Lemay with two counts of tax evasion for the 2014 and 2015 tax years in violation of 26 U.S.C. § 7201. [ECF Nos. 25-26]. On November 3, 2021, the Court held an arraignment during which Lingat and Lemay pled not guilty to all charges. [ECF No. 34]. At the Arraignment, the Government raised the possibility that venue may not be proper in the Southern District with respect to the two counts of tax evasion. [ECF No. 34]. The Court therefore set a

briefing schedule for any motion to transfer those counts. [ECF No. 34]. Thereafter, the Government and Lemay jointly moved to transfer the two counts of tax evasion to the United States District Court for the District of New Jersey, which the Court granted. [ECF Nos. 45, 46]. In the order granting the joint request to transfer the two counts of tax evasion, the Court set a briefing schedule for the Defendants' anticipated motion for a bill of particulars. [ECF No. 46]. Pursuant to that schedule, Lingat filed a Motion for a Bill of Particulars [ECF No. 49] ("Lingat Mot.") and a supporting memorandum of law [ECF No. 49-2] ("Lingat Mem."), and Lemay filed a separate Motion for a Bill of Particulars [ECF No. 50] ("Lemay Mot.") and a supporting memorandum of law [ECF No. 50-1] ("Lemay Mem."). The Government then filed a single opposition to both Motions [ECF No. 51] ("Opp."), and Lingat and Lemay each filed separate replies. [ECF No. 52] ("Lingat Reply"); [ECF No. 53] ("Lemay Reply").

## LEGAL STANDARD

The Federal Rules of Criminal Procedure gives the Court power to "direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). A bill of particulars serves to "give the defendant notice of the essential facts supporting the crimes alleged in the indictment or information, and also to avoid prejudicial surprise to the defense at trial." Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 130 (4th ed.) ("Wright & Miller"). "A bill of particulars should be required only where the charges in the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990). The Court may look beyond the indictment to determine whether a bill of particulars is required, and considers "'if the information sought by defendant is provided . . . in some acceptable alternate form.'" *United States v. Barnes*, 158 F.3d 662, 665-66 (2d Cir. 1998) (quoting *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987)). Accordingly, the Court may consider the information in the criminal complaint and the

4

information provided in discovery in assessing whether to grant a motion for a bill of particulars. *See United States v. Morgan,* 690 F. Supp. 2d 274, 284 (S.D.N.Y. 2010) ("If the information the defendant seeks is provided in the indictment or in some acceptable alternate form, such as discovery or a criminal Complaint, no bill of particulars is required") (internal quotation marks omitted). The central question, as to whether a bill of particulars is required, is whether the "information sought is necessary, not whether it is helpful." *United States v. Facciolo*, 753 F. Supp. 449, 451 (S.D.N.Y. 1990). The decision whether or not to grant a motion for a bill of particulars lies within the discretion of the district court. *See United States v. Ramirez*, 609 F.3d 495, 502 (2d Cir. 2010); *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984).

## **DISCUSSION**

The issues raised by both Lingat and Lemay in their respective Motions overlap to a certain extent. For the sake of efficiency, the Court addresses jointly the issues raised by both Parties, and addresses specific arguments raised by only one party separately. Upon thorough review of all arguments raised by either or both Parties, the Court has determined that the Defendants are not entitled to a bill of particulars at this stage.

**I.     A BILL OF PARTICULARS IS NOT NECESSARY TO IDENTIFY THE WHO, WHAT, WHERE, AND WHEN OF THE CONSPIRACY**

Lingat argues that he is entitled to a bill of particulars because the Superseding Indictment is "vague, complex, and spans a large period of time." Lingat Mem. at 4. For that reason, he seeks an order directing the Government to provide, *inter alia*, the location and addresses of where the alleged conspiracy formed or occurred (Lingat Mot. ¶¶ 1, 3,4, 5, 8, 10, 11, 12. 13), the names and statements of relevant employees or co-conspirators (Lingat Mot. ¶¶ 6, 8, 9, 10, 11, 12, 13, 14, 15), and the exact dates and times of the formation, actions taken in furtherance, and dissolution of the conspiracy (Lingat Mot. ¶ 2, 6, 10). Lingat also seeks that the

Government disclose the "overt acts allegedly committed by Mr. Lingat in furtherance of the alleged conspiracy," s*ee* Lingat Mot. ¶¶ 7, 10, and how the acts of the conspiracy accounted for the evasion of $7.8 in taxes, *see* Lingat Mot. ¶ 16.  Lemay similarly requests the nature and date of all statements or events the Government "will rely [on] to prove that a conspiracy existed," Lemay Mot. ¶¶ 1-2, 5, 6, the date on which Lemay joined the conspiracy, Lemay Mot. ¶ 3, and the date and nature of "every overt act," Lemay Mot. ¶ 4.

It is settled law that "[t]he Government need not, when charging a conspiracy, set out with precision each and every act committed by the conspirators in the furtherance of the conspiracy." *United States v. Cohen*, 518 F.2d 727, 733 (2d Cir. 1975); *see also United States v. Carroll*, 510 F.2d 507, 509 (2d Cir. 1975) ("There is no general requirement that the government disclose in a bill of particulars all the overt acts it will prove in establishing a conspiracy charge.").  For that reason, courts routinely deny motions for bills of particulars that request particular "wheres, whens, and with whoms" which can be determined from the complaint, the indictment, or by reading even voluminous discovery. *United States v. Razhden Shulaya*, 2017 WL 6513690, at *9 (S.D.N.Y. Dec. 20, 2017); *U.S. v. Cuti*, 2009 WL 3154310, at *8 (S.D.N.Y. Sept. 24, 2009).  Accordingly, requests for bills of particulars that ask for unnamed conspirators, the date or place of events, or the specific actions should be denied. *See., e.g.*, *U.S. v. Bonventre*, 2013 WL 2303726, at *5-7 (S.D.N.Y. May 28, 2013) (denying a request for a bill of particulars that lays out the specific trades the government alleges were fraudulent, in a securities fraud case); *United States v. Bin Laden*, 92 F. Supp. 2d at 242-43 (S.D.N.Y. 2000) (denying motion for a bill of particulars seeking the names of unindicted co-conspirators and a chronology of bad acts); *U.S. v. Persico*, 621 F. Supp. 842, 868 (S.D.N.Y. 1985) ("Details as to how and when the conspiracy was formed, or when each participant entered it, need not be revealed before trial").

Here, the Complaint and Superseding Indictment are not "so general that they do not advise the defendant of the specific acts of which he is accused." *Torres*, 901 F.2d at 234. The Complaint identifies multiple acts taken by Lingat in connection with the alleged conspiracy. For example, the Government lays out Lingat's participation in the alleged conspiracy in an eight-page, single-spaced section labeled "Lingat's Involvement in the Payroll Tax Evasion Scheme." According to the Complaint, Lingat served as the primary bookkeeper during the alleged time-period of the conspiracy. Compl. ¶ 6(f). When the labor was allegedly carried out by a shell company, "Lingat prepared, or directed others working under him to prepare an invoice purportedly from the" shell to Company-1 "for the cost of the move." Compl. ¶ 7(a). That "fraudulent invoice" was then submitted to Company-1, after which Lingat or others working at his direction would deposit the funds in the shell company's bank account. Compl. ¶ 7(b). Then, Lingat would prepare a "check made payable to 'cash'" and pay the movers. Compl. ¶ 7(c). The Complaint specifically alleges that Lingat used a non-Company-1 affiliated computer and software to conduct his illegitimate bookkeeping. Compl. ¶ 7(e). For his part in the conspiracy, "Lingat was paid a cash bonus," from the shell companies in a fictitious name. Compl. 7(f). The Complaint also identifies specific instances where Lingat, by e-mail, allegedly coordinated with Lemay and others about the shell companies. Compl. ¶ 6(g)(iv) (Lingat sent Lemay an April 2, 2014 e-mail with the subject "Owners of Labor Co" identifying the names and owners of five shell companies, who were all relatives of Lemay); Compl. ¶ 8(a)(i) (May 29, 2012 e-mail regarding payment); Compl. ¶ 8(c)(i) (October 14, 2014 e-mail regarding payment); Compl. ¶ 8(c)(ii) (December 23, 2014 e-mail regarding transferring of bank accounts between shell companies); Compl. ¶ 8(c)(iii) (January 6, 2015 e-mail regarding transferring of shell

company funds to Company-1); Compl. ¶ (e)(i) (November 7, 2016 e-mail regarding ownership of shell companies).

Similarly, the Complaint and Superseding Indictment identify multiple acts taken by Lemay in apparent furtherance of the conspiracy, and provide the framework for the Government's theory against him. *See* Compl. ¶¶ 6-9. Lemay acknowledges that the Superseding Indictment identifies at least three overt acts. Lemay Mem. at 7-8; SI ¶ 3. Specifically, the Superseding Indictment explains that "nominee owners" of two shell companies, who were related to Lemay, opened bank accounts for the shell companies on May 29, 2012. SI ¶ 3(a). In April 2014, a storage company affiliated with Company-1 "employed laborers working at the direction of Company-1 to carry out renovation work" in the Bronx, and were "paid through a [shell company] nominally owned by a relative of" Lemay. SI ¶ 3(b). On April 2, 2014, Lingat sent Lemay an e-mail containing the names of five shell companies with their nominal owners, all relatives of Lemay, "including [Lemay's] sister, brothers-in-law, sister-in-law, and father-in-law." SI ¶ 3(c). The Complaint further identifies at least one action taken by Lemay that occurred in December 2016 in connection with the conspiracy. *See* Compl. ¶ 8(e)(ii) ("[I]n or About December 2016, [Lemay] and CC-3 took steps to open a Sham Labor Company, to be owned by a relative of [Lemay].").

In addition, the Government has provided further information relevant to the Defendants' requests in its discovery disclosures, further obviating the need for a bill of particulars. *See Bortnovsky*, 820 F.2d at 574. Both Defendants argue that the large volume of discovery in this case nonetheless militates in favor of an order directing the Government to provide a bill of particulars. Lingat Mem. at 3; Lemay Mem. at 6. The discovery in this case includes almost one million "records." Lingat Mem. at 6. Generally speaking, "a large volume of discovery warrants

a bill of particulars if it obfuscates the allegedly unlawful conduct and unfairly inhibits the defendant's preparation for trial." *United States v. Mahaffy*, 446 F. Supp. 2d 115, 119-20 (E.D.N.Y. 2006). But that is not the case here. For "each production of discovery," the Government "has included an index of the items produced, identified by category and Bates number range." Opp. at 9. To be sure, discovery in this case appears to be extensive. Lingat Reply at 6; Lemay Reply at 6. But, as already discussed, the allegations of the Complaint and the Superseding Indictment are sufficiently specific to apprise Lingat and Lemay of the crime with which they are charged and therefore "the amount of discovery is of little import." *United States v. Levy*, 2013 U.S. Dist. LEXIS 25508, at *38 (S.D.N.Y. Feb. 25, 2013).

      Moreover, beyond laying the general framework of the Government's theory of the conspiracy, Compl. ¶ 6, the Complaint and Superseding Indictment refer to specific documents and events, with specific dates, that the Government believes evinces the conspiracy at-issue. *E.g.*, SI ¶ 3(a) (individuals related to Lemay opened bank accounts for two shell companies on May 29, 2012); Compl. ¶ 8(a)(i) (May 29, 2012 e-mail from individuals working at Lingat's direction); Compl. ¶ 8(c)(i) (October 14, 2014 e-mail from Lingat); Compl. ¶ 8(c)(ii) (December 23, 2014 e-mail from Lingat); Compl. ¶ 8(c)(iii) (January 6, 2015 e-mail from Lingat); Compl. ¶ 8(e)(i) (November 7, 2016 e-mail from Lingat to Lemay); *see* Compl. ¶ 8(e)(iii) ("email correspondence produced by Company-1" reflects that in December 2016 Lemay took steps to open a shell company). Additionally, though the Complaint identified four then-unidentified co-conspirators, the identities of three have now been made public. The Complaint refers to Lingat's then-unknown co-conspirators as CC-1, CC-2, CC-3, and CC-4. CC-1 refers to Lemay. Opp. at 1. The Complaint also refers to CC-2 and CC-3 as presidents of Company-1. CC-2 and CC-3 were charged in separate actions which have since been made public, and are therefore

now known to both Lingat and Lemay. *See United States v. Salman Rami Haim*, 19-cr-344; *United States v. Nissim Fadida*, S1 19-cr-344; Opp. at 3 n.2, 11. The Government represents that it has already—well in advance of any trial—produced all the statements made by any co-conspirator "along with all statements made to the Government by *all* witnesses interviewed in connection with the investigation to date." Opp. at 11 (emphasis in original).

The Court recognizes that there exists a large amount of discovery relevant to this multi-year conspiracy. But, as the Government points out, that concern is addressed by granting the defense sufficient time in advance of trial in which to review the discovery material. Opp. at 10 (citing *United States v. Levy*, 2013 WL 664712, at *13 (S.D.N.Y. Feb. 25, 2013)). A bill of particulars is not necessary when "the government has made sufficient disclosures concerning its evidence and witnesses by other means." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999).

As Lingat's own brief recognizes, a bill of particulars is not "a general investigative tool for the defense" or something that can be used "to compel disclosure of the Government's evidence or its legal theory prior to trial." Lingat Mem. at 4. The Defendants' requests are not appropriately addressed by a bill of particulars, or are otherwise unnecessary, and their Motions are therefore denied.[3]

## II. A BILL OF PARITUCLARS IS NOT NECESSARY TO IDENTIFY UNNAMED CO-CONSPIRATORS

The Defendants contend that they are entitled to know the identities of their unnamed co-conspirators. *See* Lingat Mem. at 7; Lemay Mem. at 9. In evaluating requests for information

---

[3] In his reply, Lemay argues that the "paucity of the Indictment makes it likely for the Government to constructively amend or vary from the indictment at trial." Lemay Reply at 6. That argument is entirely absent from Lemay's memorandum in support. Arguments raised for the first time in a reply memorandum are waived and need not be considered. *See, e.g., Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010). Nonetheless, Lemay's argument—made without any supporting legal authority—is without merit because it is wholly speculative at this stage to suggest that the Government might vary from the indictment at trial.

regarding unnamed co-conspirators, courts have considered factors such as (i) the number of co-conspirators; (ii) the duration and breadth of the alleged conspiracy; (iii) whether the Government has otherwise provided adequate notice of the particulars; (iv) the volume of pre-trial discovery; and (vi) the potential harm to the Government investigation. *United States v. Reddy*, 190 F. Supp. 2d 558, 570 (S.D.N.Y. 2002). Applying those factors, courts have granted requests for identification where "the number of defendants was large, where the alleged conspiracy spanned long periods of time and where the alleged schemes were wide-ranging." *Id.* The fundamental purpose of a bill of particulars, however, is to permit the defendant ""to prepare for trial, to [avoid] surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *Bortnovsky*, 820 F.2d at 574.

      The Court is unpersuaded by both Lingat and Lemay's requests for information about the unnamed co-conspirators in this case. This case presents a relatively straightforward tax evasion conspiracy relating to one company, involving two defendants, which spans six years. "[C]ourts in this circuit frequently exercise their discretion to deny requests to identify co-conspirators through a bill of particulars." *United States v. Murgio*, 209 F. Supp. 3d 698, 721 (S.D.N.Y. 2016). That is especially true where, as here, the allegations of the Superseding Indictment and Complaint "are specific and the Government has provided discovery that will enable a defendant to adequately prepare his defense." *United States v. Ali Sadr Hashemi Nejhad*, 2019 U.S. Dist. LEXIS 211911, at *53 (S.D.N.Y. Dec. 6, 2019). Significantly, as previously discussed, three of the four co-conspirators referenced in the Complaint have now been identified. Beyond identifying alleged co-conspirators, the Government has also produced all statements made by the co-conspirators and witnesses interviewed. Opp. at 11. Further, the Government acknowledges that it will provide Defendants trial exhibits and witness lists in advance of trial.

Opp. at 4. Accordingly, it is not "necessary" that the Government reveal the names of known co-conspirators, un-indicted or indicted, because there is no reasonable expectation that Defendants will be subjected to "surprise" at this stage. *Bortnovsky*, 820 F.2d at 574.

## III. STATUTE OF LIMITATIONS

Lemay argues that a bill of particulars is appropriate here because he is entitled to "establish that the Government's Indictment was not without the statute of limitations." Lemay Mem. at 7. Lingat and Lemay are charged with a conspiracy to defraud the IRS that existed "[f]rom in or about 2010 through in or about December 2016." SI ¶ 1. The superseding indictment in this case, naming Lemay, was filed on October 20, 2021. [ECF No. 26]. The statute of limitations applicable to Count One, charging the Defendants with a conspiracy to defraud the IRS, is six years. *See* 26 U.S.C. § 6531(1). The statute of limitations begins to run "after the last overt act in furtherance of the main goals of the conspiracy." *United States v. Fletcher*, 928 F.2d 495, 498 (2d Cir. 1991). As Lemay acknowledges, the Superseding Indictment identifies three specific overt acts taken by Lemay during the asserted time-period of the conspiracy. *See* SI ¶ 3; Lemay Mem. at 7-8. The Complaint further identifies at least one action taken by Lemay that occurred in December 2016 in connection with the conspiracy. *See* Compl. ¶ 8(e)(ii) ("[I]n or About December 2016, [Lemay] and CC-3 took steps to open a Sham Labor Company, to be owned by a relative of [Lemay]."). Therefore, a bill of particulars is not necessary to evaluate whether the statute of limitations bars Count One with respect to Lemay because the Complaint provides information regarding acts that occurred up until the charged end-date of the conspiracy, placing Count One within the statute of limitations.

## **CONCLUSION**

For the foregoing reasons, Defendants have not established the propriety or necessity of a bill of particulars. Accordingly, the Motions [ECF Nos. 49, 50] are DENIED.

**SO ORDERED.**

**Date: May 12, 2022**
      **New York, NY**
                                        **MARY KAY VYSKOCIL**
                                        **United States District Judge**