USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/1/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-against-

EUGUENE JOSEPH LEMAY a/k/a Gene Lemay,
and JOEL LINGAT,

Defendants.

1:21-cr-573 (MKV)

**OPINION AND ORDER
DENYING MOTION TO DISMISS
AND MOTION TO SEVER**

---

MARY KAY VYSKOCIL, United States District Judge:

Defendants Eugene Joseph Lemay and Joel Lingat are charged in a one-count Second Superseding Indictment [ECF No. 71] with engaging in a conspiracy to defraud the Internal Revenue Service ("IRS") in violation of 18 U.S.C. § 371. Lemay filed a motion to dismiss the conspiracy charge against him on statute-of-limitations grounds [ECF Nos. 67-68], and Lingat filed a motion for severance [ECF Nos. 69-70]. For the reasons stated herein, the Motions are denied.

## BACKGROUND[1]

Lingat and Lemay were both employed by a company, referred to as "Company-1," which provides moving and storage services. SSI ¶ 2. Lemay served as the President and Chief Executive Officer from the 1980s until 2011, after which time he continued to supervise and play a role in the management of the company. Compl. ¶¶ 6(b), 6(f) n.1.[2] Lingat served as the head bookkeeper since 2010. Compl. ¶ 6(f). From 2010 until the end of 2016, Lingat and Lemay allegedly conspired to defraud the IRS of federal income and payroll taxes that should have been

---

[1] The relevant facts are taken from the Complaint [ECF No. 1] ("Compl.") and the Second Superseding Indictment [ECF No. 71] ("SSI").

[2] The Complaint, filed before the Superseding Indictment that charged Lemay as a co-conspirator [ECF No. 26], refers to Lemay as "CC-1" throughout. *See* Opp. at 5 n.2 (confirming that CC-1 in the Complaint refers to Lemay).

1

paid by Company-1 and/or by affiliated companies.  Compl. ¶¶ 1-2; SSI ¶¶ 1-2.  Lingat and Lemay allegedly carried out this scheme through the use of sham companies—nominally owned by their relatives and close associates—which purported to employ laborers who, in fact, worked at the direction and under the control of Company-1.  SSI ¶ 2.  As a result of this alleged scheme, Company-1 and related companies evaded more than $7.8 million in payroll taxes.  SSI ¶ 2.

## PROCEDURAL HISTORY

Lingat was initially charged on September 15, 2021, in a one-count indictment with conspiracy to defraud the IRS in violation of 18 U.S.C. § 371 [ECF No. 13], to which he pled not guilty.  On October 20, 2021, Magistrate Judge Lehrburger unsealed a Superseding Indictment, charging Lingat and Lemay with one count of conspiracy to defraud the IRS in violation of 18 U.S.C. § 371, and Lemay with two counts of tax evasion for the 2014 and 2015 tax years in violation of 26 U.S.C. § 7201.  [ECF Nos. 25-26].

At arraignment, Lingat and Lemay each pled not guilty to all charges.  [ECF No. 34].  At the initial conference at the arraignment hearing, the Government raised with the Court the possibility that venue may not be proper in the Southern District of New York with respect to the two counts of tax evasion against Lemay.  [ECF No. 34].  In response, the Court set a briefing schedule for any motion to transfer those counts.  [ECF No. 34].  Thereafter, the Government and Lemay jointly moved to transfer the two counts of tax evasion to the United States District Court for the District of New Jersey, which the Court granted.  [ECF Nos. 45, 46].

Defendants subsequently filed separate motions for a bill of particulars with respect to the remaining count of conspiring to defraud the IRS.  [ECF Nos. 49] ("Lingat Br."); [ECF No. 50] ("Lemay Br.").  Lemay's motion argued, among other things, that "[a] bill of particulars is required to establish that the Government's Indictment was not without the statute of limitations."  Lemay Br. at 7.  The Court held that "a bill of particulars is not necessary to

evaluate whether the statute of limitations bars Count One with respect to Lemay because the Complaint provides information regarding acts that occurred up until the charged end-date of the conspiracy, placing Count One within the statute of limitations." [ECF No. 57] ("Op.") at 12. Specifically, the Court found that the Complaint "identifies at least one action taken by Lemay that occurred in December 2016 in connection with the conspiracy." Op. at 12 (citing Compl. ¶ 8(e)(ii) ("[I]n or About December 2016, [Lemay] and CC-3 took steps to open a Sham Labor Company, to be owned by a relative of [Lemay].")). The Court thus denied both Motions. [ECF No. 57].

Lemay has now filed a motion to dismiss the conspiracy charge against him on statute-of-limitations grounds [ECF Nos. 67-68] ("Lemay Mot."), and Lingat has filed a motion for severance [ECF Nos. 69-70] ("Lingat Mot."). The Second Superseding Indictment was returned on August 25, 2022, three weeks after the motions were filed, and later the same day, the Government filed a single opposition brief to Defendants' motions. [ECF No. 70] ("Opp."). In its opposition, the Government argued, among other things, that the return of the Second Superseding Indictment rendered moot Lemay's motion to dismiss by adding allegations of overt acts that occurred within the statue of limitations. Opp. at 5. Lingat and Lemay each filed separate replies. [ECF No. 72] ("Lingat Reply"); [ECF No. 73] ("Lemay Reply").

Thereafter, the Parties filed a joint letter advising the Court that the pending motions could be decided on the current record, notwithstanding the fact that the Second Superseding Indictment was returned after Defendants had filed their motions. [ECF No. 78].

**LEGAL STANDARD**

I.  **MOTION TO DISMISS**

"When deciding a motion to dismiss an indictment pursuant to Federal Rule of Criminal Procedure 12(b), a court must accept all factual allegations in the indictment as true." *United States v. Kogan*, 283 F. Supp. 3d 127, 134 (S.D.N.Y. 2017). "In the specific context of a motion based on statute of limitations grounds, a pre-trial motion to dismiss is premature if the indictment is facially sufficient and the defendant's argument in favor of dismissal requires a determination of factual issues." *Id.* "Indeed, a defendant's assertion of the statute of limitations is an affirmative defense to be raised at trial." *Id.*; *see also United States v. Levine*, 249 F. Supp. 3d 372, 738 (S.D.N.Y. 2017) ("[T]he Government need not have alleged in the Indictment facts that would defeat an affirmative defense based on the statute of limitations.").

The statute of limitations applicable to a conspiracy to defraud the IRS is six years. *See* 26 U.S.C. § 6531(1). The statute of limitations begins to run "after the last overt act in furtherance of the main goals of the conspiracy." *United States v. Fletcher*, 928 F.2d 495, 498 (2d Cir. 1991). "The Government is not required to prove that each member of the conspiracy committed an overt act within the statute of limitations." *United States v. Canale*, No. 14-cr-713, 2015 WL 3767147, at *1 (S.D.N.Y. June 17, 2015) (citing *Hyde v. United States*, 225 U.S. 347, 369-70 (1912)). "[T]he crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy." *United States v. Salmonese*, 352 F.3d 608, 614 (2d Cir. 2003) (internal quotation marks omitted).

## II.     MOTION FOR SEVERANCE

Federal Rule of Criminal Procedure 14 provides, in relevant part, that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  The Supreme Court has explained that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).

With conspiracy charges, "[t]he established rule is that a non-frivolous conspiracy charge is sufficient to support joinder." *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1988). "Where a defendant is a member of a conspiracy, all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against the defendant." *United States v. Salameh*, 152 F.3d 88, 111 (2d Cir. 1998).  "Differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003).

The case for severance is stronger when defendants in a joint trial will assert "mutually antagonistic defenses." *United States v. Yousef*, 327 F.3d 56, 151 (2d Cir. 2003).  "Defenses are mutually antagonistic when accepting one defense requires that 'the jury must of necessity convict a second defendant.'" *Id.* (quoting *United States v. Cardascia*, 951 F.2d 474, 484 (2d Cir. 1991)).  However, mutually antagonistic defenses are not "prejudicial *per se*" and do not always require severance. *Id.*  Severance is not required, for instance, "where the risk of prejudice can be offset by less drastic measures . . . such as limiting instructions." *United States v. O'Connor*, 650 F.3d 839, 858 (2d Cir. 2011).

**DISCUSSION**

I.      **MOTION TO DISMISS**

Lemay moved to dismiss the Superseding Indictment on the ground that it was untimely. Specifically, Lemay claimed that the Superseding Indictment failed to allege an overt act in furtherance of the alleged conspiracy within the statute of limitations—*i.e.*, within six years of when the Superseding Indictment was filed on October 20, 2021. The Government does not dispute the absence of such an allegation from the Superseding Indictment; however, it highlights the fact that the Superseding Indictment clearly alleged that the conspiracy continued "through in or about December 2016," *i.e.*, within the statute of limitations period, and dismisses the absence of an overt act as a mere "defect in pleading" that would not prejudice the defendant. Opp. at 4. In any event, the Government claims to have remedied the defect, and rendered moot Lemay's motion, with the Second Superseding Indictment returned on August 25, 2022.

The Second Superseding Indictment alleges at least three overt acts within the six-year statute of limitations, *i.e.*, after August 25, 2016:[3] (1) Lingat sending an email to Lemay on November 7, 2016, listing the four acting Sham Labor Companies in use by Company-1 at the time and their nominal owners, including Lemay's sister and brother-in-law (SSI ¶ 3(d)); (2) Lingat sending an email on November 16, 2016, to an individual employed by Company-1's parent company, copying Lemay, seeking payment of several invoices purportedly issued by a Sham Labor Company (SSI ¶ 3(e)); and (3) Lemay instructing a senior executive of Company-1 in or about late November 2016 or early December 2016 to open a new Sham Labor Company,

---

[3] Neither the Government nor Lemay discuss whether the Second Superseding Indictment relates back to the Superseding Indictment, such that the statute of limitations would have started to run on October 20, 2015, six years prior to the October 20, 2021 unsealing of the Superseding Indictment. The Court need not decide this issue, however, as each of the alleged overt acts added to the Second Superseding Indictment occurred within the statute of limitations even assuming there was no relating back.

to be owned by Lemay's brother, soon after which the senior executive contacted a provider of worker's compensation insurance to obtain a quote for insurance for the proposed new Sham Labor Company (SSI ¶ 3(f)).

Lemay argues that none of these new allegations cures the initial defect and that the indictment thus remains untimely. The crux of Lemay's argument is that these alleged acts all post-date the alleged evasion of payroll taxes—*i.e.*, the acts occurred after the relevant tax returns were filed—and, as a result, it "cannot be argued that these acts were necessary to the successful accomplishment of the crime of tax evasion." Lemay Reply at 5. This misses the mark. As a preliminary matter, "conduct in furtherance of a conspiracy need not be successful to create criminal liability." *United States v. Tuzman*, No. 15-cr-536, 2021 WL 1738530, at *20 (S.D.N.Y. May 3, 2021) (citing *United States v. Rosa*, 17 F.3d 1531, 1543 (2d Cir. 1994) ("Because it is the conspiratorial agreement itself that is prohibited, the illegality does not depend on the actual achievement of the coconspirators' goal."))). Moreover, an act need not be "necessary" to carry out a conspiracy to be in furtherance of that conspiracy; the act need only demonstrate the conspiracy's existence or "prove that it is at work." *United States v. Slocum*, 695 F.2d 650, 654 (2d Cir. 1982).

Each of the three alleged acts added to the Second Superseding Indictment qualify as an overt act performed in furtherance of the alleged conspiracy. Lingat and Lemay allegedly conspired to defraud the IRS of federal income and payroll taxes through the use of sham companies which purported to employ laborers who, in fact, worked at the direction and under the control of Company-1. SSI ¶ 2. The new allegations all concern the function or formation of these sham companies, which serves to evidence the continued existence of the alleged conspiracy. *See United States v. Pizzonia*, 577 F.3d 455, 466 (2d Cir. 2009) (noting that

"conspiracy [is] a continuing crime, that is not complete until the purposes of the conspiracy have been accomplished or abandoned" (internal quotation marks omitted)).  That some of these acts were performed by Lingat rather than Lemay does not change things; the Government need only allege that Lemay or *any of his co-conspirators* committed such an act while Lemay was still a member of the conspiracy.  *See United States v. Ben Zvi*, 242 F.3d 89, 97 (2d Cir. 2001) (stating that statute of limitations depends on a timely overt act involving conduct by either the defendant or a co-conspirator).  At this stage of the proceedings, when all allegations must be read in the light most favorable to the Government, that burden has been satisfied.

II.     MOTION FOR SEVERANCE

Lingat's principal argument in support of severance is that his defense "directly conflicts and contradicts any defense his co-defendant, Mr. Lemay, may raise," because "Mr. Lingat asserts that Mr. Lemay and the cooperating witnesses . . . directed [Lingat's] activities." Lingat Mot. at 2.  But whatever inconsistencies may exist between the defenses ultimately offered by the two defendants, Lingat has failed to show that those defenses will be mutually antagonistic.  Lingat's defense will be considered mutually antagonistic to Lemay's only if acceptance of that defense "*must of necessity*" result in Lemay's conviction.  *Cardascia*, 951 F.2d at 484 (emphasis added).  That is not the case.  As the Government points out, Lemay may put forward a defense—*e.g.*, lack of intent—that in no way conflicts with the defense proffered by Lingat.  In that scenario, the jury could, in theory, believe both defenses.  That one defendant may attempt to shift blame on another defendant during trial is no more than the "fingerpointing" that is common in multi-defendant cases and does not warrant severance.  *United States v. Casamento*, 887 F.2d 1141, 1154 (2d Cir. 1989).

Lingat next argues that his own "participation, always clerical in nature, is of far less consequence than that of Mr. Lemay—the former president of the Company . . . ." Lingat Mot.

8

at 2-3.  This argument is also unavailing.  Even accepting Lemay's characterization of his role and responsibilities, a defendant is not entitled to severance simply because the evidence against his co-defendants is more damaging or voluminous than the evidence against him.  *See Spinelli*, 352 F.3d at 55 ("Even joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible." (internal quotation marks omitted)).  To be sure, there are "cases in which the sheer volume and magnitude of the evidence against one defendant so dwarfs the proof presented against his co-defendant that a severance is required to prevent unacceptable spillover prejudice."  *Id.*  But there is nothing to suggest that this is such a case.

Relatedly, Lingat argues that he will be prejudiced by a joint trial because Lemay's alleged misconduct dates back to the 1980s—before Lingat joined the Company in 1998.  As the government points out, however, much of the evidence about Lemay's alleged offense would be admissible at a separate trial of Lingat, to the extent such evidence "was relevant to proving the nature and scope of the conspiracy in which both were, to differing degrees, involved."  *Spinelli*, 352 F.3d at 56.  Moreover, "even the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance."  *Id.* (internal quotation marks omitted).  Here, Lingat has not shown that otherwise inadmissible evidence concerning Lemay would result in substantial prejudice.  In any event, to the extent that a category of evidence is irrelevant to Lingat, "a limiting instruction will suffice to remove any prejudice."  *United States v. Bennett*, 485 F. Supp. 2d 508, 515 (S.D.N.Y. 2007) (citing *Zafiro*, 506 U.S. at 540-41)).

Finally, Lingat argues that "it would be duplicative and a waste of the Court' resources" to try Lingat with Lemay in New York when two counts against Lemay have already been transferred to the District of New Jersey.  Lingat Reply at 8.  Lingat fails to explain, however, the

9

extent to which the evidence in this case overlaps with the evidence which will be presented in the New Jersey case. More importantly, Lingat fails to account for the fact that Lemay has not requested that the count in this case be transferred to New Jersey; nor is it clear that such a request would or could be granted. Indeed, it would be duplicative and a waste of Court resources here in this District to have two separate trials on the conspiracy count—one against Lingat and another against Lemay—because separate counts with wholly different allegations and presumably proof, now are pending in New Jersey. In short, Lingat's argument lacks any genuine basis and itself amounts to a waste of judicial resources.[4]

## CONCLUSION

For the foregoing reasons, Defendants' Motions are DENIED.

The Clerk of Court respectfully is requested to close the motions at ECF Nos. 67 and 69.

**SO ORDERED.**

**Date: December 1, 2022**
**New York, NY**

                                                             **MARY KAY VYSKOCIL**
                                                             **United States District Judge**

---

[4] Lingat also argues that the case should be severed because of its complexity. This argument was raised for the first time in reply, however, and is thus considered waived. *See Farmer v. United States*, No. 15-cv-6287, 2017 WL 3448014, at *3 (S.D.N.Y. Aug. 10, 2017) ("Courts have repeatedly held that arguments raised for the first time in reply briefs are waived."). In any event, there is nothing so complex about a single-count indictment charging two defendants with a conspiracy to defraud the IRS.