USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/11/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

JOEL LINGAT and JOSEPH EUGENE LEMAY,

Defendants.

21-cr-573 (MKV)

MEMORANDUM OPINION AND ORDER ON MOTIONS *IN LIMINE*

---

MARY KAY VYSKOCIL, United States District Judge:

Defendants Lingat and Lemay each are charged with a single count of conspiracy to defraud the United States, specifically, the Internal Revenue Service, in violation of Title 18, United States Code, Section 371, based on the allegedly years-long evasion of millions of dollars in payroll taxes purportedly owed by Moishe's Moving, a nationwide moving company headquartered in New Jersey. The Government has filed four motions *in limine*. Defendants have filed no motions *in limine*. The Court ruled on the Government's motions at the March 6, 2024 Pretrial Conference. This memorandum memorializes and provides amplified reasoning for the Court's rulings on the Government's motions.

## BRIEF BACKGROUND

Defendants Lingat and Lemay are each charged with a single count of conspiracy to defraud the United States, specifically, the Internal Revenue Service ("IRS"), in violation of Title 18, United States Code, Section 371. Specifically, the Superseding Indictment (S2 21-cr-573) alleges that from in or about 2010 through late 2016, Moishe's Moving paid its movers off-the-books, without making any payroll tax contributions, as part of a scheme to defraud the United States by avoiding payment of taxes. The Superseding Indictment alleges that the scheme was carried out through the use of sham companies that purportedly employed laborers working at the

direction and under the control of Moishe's Moving. Defendants allegedly oversaw these practices.

The Government's theory of the case as laid out in the Indictment and its motion papers is as follows. Moishe Mana founded Moishe's Moving in the early 1980s. Beginning shortly after its founding until approximately 2011, Lemay ran the company's day-to-day operations and acted as the President and General Manager of Moishe's Moving. Beginning in at least the late 1980s through late 2016, Moishe's Moving paid its movers off-the-books, without making any payroll tax contributions. Lemay purportedly continued to informally supervise operations at Moishe's Moving, including the workings of the payroll tax evasion scheme, until 2017. Lingat was the head bookkeeper at Moishe's Moving from the mid-2000s until 2021.

Moishe's Moving and other companies controlled by Moishe Mana (the "Mana Entities") provide, *inter alia*, residential and commercial moving services and warehouse storage. Much of the actual work of the companies is performed by manual laborers. One way Moishe's Moving paid its laborers was by maintaining its own general pool of laborers and paying them through fake or sham companies (the "Sham Companies") that were, in fact, controlled by Moishe's Moving. The Sham Companies were typically incorporated by nominees, often family members of Lemay or his successor as General Manager and President of Moishe's Moving ("Witness-1"), who were paid a fee for serving on paper as owners of these entities. The Sham Companies were typically used for a short period of time, and then shut down.

Employees of Moishe's Moving assigned laborers from Moishe's Moving's general labor pool to various Sham Companies. When those laborers completed a move, Lingat or one of his direct reports prepared a fraudulent invoice from one of the Sham Companies addressed to Moishe's Moving, as though the billing company were a legitimate owner-operator company.

2

Once Moishe's Moving had issued a check paying the Sham Company for the labor it purportedly provided, Lingat, or sometimes another employee, deposited that check into a Sham Company bank account, which Lingat principally controlled. Lingat then prepared checks written to cash, drawn on the Sham Company bank account, in order to pay the laborers who had worked on the job. Moishe's Moving treated the Sham Companies as independent contractors, and, as a result, the Company paid no payroll taxes on the income paid to the laborers.

The Sham Companies were paid the 35% cut of the price of a move typically paid to legitimate owner-operator companies, but only about 23% of the price of any given move was used to pay the laborers who performed the move. Thus, approximately 12% of the money paid as a result of a move remained in the Sham Company bank account. Lingat disbursed these funds at the direction of Lemay and Witness-1, typically to pay for miscellaneous expenses of Moishe's Moving and other Mana Entities and to make various payments, including to the nominee owners of the Sham Companies.

## DISCUSSION

In advance of the upcoming trial, the Government moved *in limine* on certain evidentiary issues.[1] *First*, the Government seeks to admit evidence of the years-long pattern of tax evasion at Moishe's Moving that took place *prior* to the beginning of the period charged in the Indictment (2010 to 2016) as either direct evidence, or alternatively, for proper purposes under Rule 404(b). *Second*, the Government seeks to admit co-conspirator statements made in furtherance of the charged conspiracies under Rule 801(d)(2)(E). *Third*, the Government seeks to admit evidence of Lemay's alleged *personal* tax evasion pursuant to Rule 404(b). *Fourth*, the Government seeks to

---

[1] In support of its motion, the Government filed a memorandum of law (Gov. Mem. [ECF No. 96]) and a reply (Reply [ECF No. 116]). In opposition to the government's motion, Defendant Lingat filed an Opposition (Lingat Opp. [ECF No. 106] and Defendant Lemay filed an Opposition (Lemay Opp. [ECF No. 115]).

3

introduce Lingat's statements made during a proffer with the Government *if* Lingat offers evidence or makes arguments inconsistent with those statements.

**I.     Evidence of Tax Evasion Scheme Prior to Period Charged in Indictment**

The Government seeks a pretrial ruling permitting the admission of evidence, including testimony and records, concerning what it contends are the "origins" of the tax evasion scheme at Moishe's Moving, specifically with respect to operations that took place *prior* to 2010, the beginning of the charged period in the Indictment. The Government argues this evidence is admissible as either direct evidence of the charged crime, or alternatively, under Rule 404(b). Gov. Mem. at 9.

    **A.  As Direct Evidence**

In this case, the Government contends the scheme began as early as the late 1980s. The Government argues that evidence from this timeframe—which is before the charged period—is admissible as direct evidence of the crimes charged in order to add context and dimension to its proof of the charges, including to show the circumstances surrounding the events. Gov. Mem. at 9. Conversely, Defendants argue that to admit evidence prior to the charged period would constitute an unconstitutional constructive amendment of the Indictment by broadening the basis of conviction. Lingat Opp. at 1; Lemay Opp. at 10. Defendants further argue that such uncharged criminal activity dating back approximately 20 years prior to the charged period is too remote and not "inextricably intertwined" with the charged conduct. Lingat Opp. at 2; Lemay Opp. at 10.

Under the Federal Rules of Evidence, uncharged criminal conduct or other bad acts can, in certain circumstances, be admissible either as direct evidence or pursuant to Rule 404(b). Evidence of uncharged criminal conduct or other bad acts can be admitted as *direct* evidence *if* the conduct or act "arose out of the same transaction or series of transactions as the charged offense, *if* it is

4

inextricably intertwined with the evidence regarding the charged offense, *or if* it is necessary to complete the story of the crime on trial." *United States v. Kaiser*, 609 F.3d 556, 570 (2d Cir. 2010) (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (emphasis added).

Thus, a "trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment." *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997) (quotations omitted); *see also United States v. Blanco*, 811 F. App'x 696, 704 (2d Cir. 2020). This admissible background evidence includes, for example, "the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." *Id.* (quotations omitted). Moreover, when "a conspiracy is charged, uncharged acts may be admissible as direct evidence of the conspiracy itself." *United States v. Baez*, 349 F.3d 90, 93 (2d Cir. 2003) (quotations omitted).

Given the above case law, evidence concerning the origins of the payroll tax evasion scheme at Moishe's Moving and its operation prior to the charged period is likely admissible as direct evidence. First, evidence with respect to the tax evasion scheme prior to 2010 will likely provide significant background demonstrating "the circumstances surrounding" the inception of the scheme and "to provide background for the [scheme] alleged in the indictment." *Gonzalez*, 110 F.3d at 941. If, as the Government asserts, the tax evasion scheme began in the late 1980s, testimony from witnesses relating to the origins of the scheme may be necessary to provide context for the jury. In fact, excluding evidence prior to 2010 may lead to jury confusion. For example, the Government argues that the establishment of the use of Sham Companies occurred way before 2010, and thus, testimony relating to the nature, structure, and development of the scheme may be "necessary to complete the story of the crime on trial." *Kaiser*, 609 F.3d at 570 ("[I]t would have

been impossible to intelligibly present a case about much of what went on after [the beginning of the charged conduct] without starting at the beginning.").

Finally, admitting evidence of the corporate tax scheme prior to the charged period would not constitute an unconstitutional constructive amendment of the Indictment as argued by Defendants. *See* Lingat Opp. at 1; Lemay Opp. at 10. "A constructive amendment of the indictment occurs when the evidence presented at trial *and* the district court's jury instructions *combine* to modify *essential elements* of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than one charged by the grand jury." *United States v. Robins*, 673 F. App'x 13, 19 (2d Cir. 2016) (internal quotations and modifications omitted) (emphasis added).

First, because constructive amendment of an Indictment depends on jury instructions *and* the presentation of evidence at trial, any such argument by the defense at this stage is premature. Second, evidence of the corporate tax scheme prior to the charged period would simply not "affect an essential element of the offense." *United States v. Couto*, 119 F. App'x 345, 348 (2d Cir. 2005). The elements for a violation of Title 18, United States Code, Section 371 remain the same regardless of what time period is charged in the Indictment. To the extent that Defendants argue that allowing such evidence would permit the jury to convict them on "grounds different from those set forth in the Indictment," *Couto*, 119 F. App'x at 348—for example, the jury finds Defendants guilty of Section 371 but for conduct prior to the 2010 to 2016 period charged in the Indictment—any such concerns would be mooted with a proper jury charge which clearly instructs the jury regarding the time period of the charged conduct. *Couto*, 119 F. App'x at 348; *cf. United States v. Wozniak*, 126 F.3d 105, 108–11 (2d Cir.1997) (holding that constructive amendment occurred when indictment charged defendant with cocaine and methamphetamine offenses but

government's evidence consisted primarily of marijuana evidence *and district court charged jury that it could convict regardless of illegal substance involved*).

### B. Pursuant to Rule 404(b)

The Government argues that even if the Court does not admit such evidence as direct evidence, in the alternative, the evidence is admissible pursuant to Rule 404(b) "to show planning, preparation, knowledge, and intent on the part of the defendants." Gov. Mem. at 13.

Under Rule 404(b)(1), "[e]vidence of any other crime, wrong, or act" is inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, the "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). In such case, "upon request, the district court must give an appropriate limiting instruction to the jury." *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992).

At bottom, all evidence of "intrinsic act[s] offered as direct proof of the crime charged will, by definition, satisfy Rule 404(b)." *United States v. Shin*, No. 19 CR. 552 (JPC), 2022 WL 153184, at *4 (S.D.N.Y. Jan. 15, 2022) (quoting *United States v. Nektalov*, 325 F. Supp. 2d 367, 372 (S.D.N.Y. 2004)). Therefore, because evidence concerning the origins of the payroll tax evasion scheme prior 2010 is likely admissible as *direct* evidence, by definition, this evidence would also satisfy Rule 404(b). *Shin*, 2022 WL 153184, at *4. The Government asserts that the four elements of admissibility under Rule 404(b), as laid out in *Huddleston v. United States*, 485 U.S. 681, 691 (1988), are "clearly met here: evidence of the defendants' participation in the tax evasion scheme at Moishe's Moving prior to 2010 bears directly on their planning and preparation for, knowledge of, and intent to participate in the same scheme between 2010 and 2016." Gov. Mem. at 13. The

7

Court agrees that such evidence may be offered to prove knowledge and intent, which are disputed elements of the charged offense, and that its probative value substantially outweighs any possible prejudicial effect. *Huddleston*, 485 U.S. at 691.

The only practical benefit of admitting evidence as direct evidence, as opposed to under Rule 404(b), is that the Government need not separately satisfy the notice requirement of Rule 404(b), and the Court need not give a limiting instruction cautioning the jury against making an improper inference of criminal propensity. *Shin*, 2022 WL 153184, at *4. Accordingly, "where it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b)." *United States v. Johnson*, 469 F. Supp. 3d 193, 204 (S.D.N.Y. 2019). Rule 404(b)'s notice requirement states that the prosecutor must "provide reasonable notice of any such evidence . . . in writing before trial," and "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." Fed. R. Evid. 404(b)(3). Because evidence concerning the origins of the payroll tax evasion scheme prior to the charged period is likely admissible as *direct* evidence, by definition, this evidence would also satisfy Rule 404(b). *Shin*, 2022 WL 153184, at *4. Accordingly, evidence concerning pre-Indictment period actions is likely admissible under Rule 404(b).

### C. Rule 403 Prejudicial vs. Probative

Even where uncharged conduct constitutes direct evidence or "other crimes" evidence under Rule 404(b), in order to be admissible, the uncharged conduct must survive scrutiny under the Rule 403 balancing test. Rule 403 provides that a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of," *inter alia*, "unfair prejudice." Fed. R. Evid. 403. The Second Circuit has declined to find probative evidence which is properly used at

8

trial unduly prejudicial under Rule 403 where it "did not involve conduct more inflammatory than the charged crime." *United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006); *see also Pitre*, 960 F.2d at 1120 (finding no error with regard to Rule 403 where the evidence of prior crimes "did not involve conduct any more *sensational* or *disturbing* than the crimes with which [the defendants] were charged" (citation omitted)).

The Court finds that the pre-2010 conduct is highly probative of the charged conduct and is not "more sensational" or more "disturbing" than the charged conduct. *Pitre*, 960 F.2d at 1120. The Government further argues, and the Court agrees, that because the charged conduct "is simply a continuation of the pre-2010 conduct," such evidence is "highly probative of the charged conduct because it directly explains the origins and design of the charged conduct and demonstrates the defendants' longstanding knowledge of and intent to engage in the charged conduct." Reply at 11. Moreover, the pre-2010 conduct is not "unduly prejudicial" to the defendants because, again, it is merely a continuation of the same charged conduct and therefore cannot be more sensational or disturbing than the charged conduct.

However, as the Court discussed at the pretrial hearing, Defendants' argument that evidence of the pre-2010 conduct would be "cumulative of the evidence of intent and knowledge during the period of the charged conspiracy" has some merit. Lemay Opp. at 12. Specifically, the Government's theory is that the tax evasion scheme began as much as 22 years before the beginning of the charged conspiracy. The Government counters that the evidence of pre-2010 conduct it seeks to introduce will be limited and will not be cumulative "because it will show how the tax evasion scheme at Moishe's Moving began and developed over time, including as different individuals occupied different roles at the company." Reply at 11. As such, the Court finds that Rule 403 does not bar the admission of evidence of the pre-2010 tax evasion. However, as warned

9

at the pretrial conference, the Court will limit such evidence if it starts to become cumulative. Ultimately, the Government should be able to provide context and background on the origins of the tax scheme, but it need not go through 22 years of such conduct to do so. The Government is on notice of the anticipated time of trial and that it will not be extended, and the Government has assured the Court that it will comply with the applicable time constraints.

## II. Co-Conspirator Statements

The Government next moves *in limine* for permission to admit out-of-court statements made by participants in the payroll tax evasion scheme as co-conspirator statements pursuant to Rule 801(d)(2) of the Federal Rules of Evidence. Gov. Mem. at 14. Although the Government begins its motion by arguing that it seeks to admit "certain categories" of statements made by co-conspirators, it ultimately concludes its argument by, in essence, requesting blanket permission to admit all out-of-court statements made by certain purported co-conspirators of Defendants. Gov. Mem. at 17 ("Accordingly, . . . it is not necessary for the Court to conduct a particularized review of each co-conspirator or each co-conspirator's statement. Instead, it is appropriate for the Court to rule that out-of-court statements of coconspirators . . . are *categorically* not hearsay under the co-conspirator statement exception.") (emphasis added).

The Federal Rules of Evidence provide that "[a] statement is not hearsay if . . . the statement is offered against an opposing party and was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). To admit a statement pursuant to this rule, a court must find by a preponderance of the evidence: (1) that a conspiracy that included the defendant and the declarant existed; and (2) the statement was made during the course and in furtherance of that conspiracy. *United States v. Coppola*, 671 F.3d 220, 246 (2d Cir. 2012). This is, of course, the law and indeed, defense counsel confirmed at the pretrial conference that it

does not dispute that an out-of-court statement by a defendant's co-conspirator is not hearsay and is admissible if it was made during, and in furtherance of, the conspiracy. The Defendants complain, however, that they do not know what evidence—specifically which statements—the Government seeks to admit under this Rule.

In its briefing, the Government identifies only two "examples" of co-conspirator statements in its briefing that it intends to introduce: (1) Witness-1 (Lemay's successor as General Manager and President of Moishe's Moving) is expected to testify that when he became Operations Manager at Moishe's Moving, an accountant and another employee informed him of the use of "Sham Companies" to evade taxes; and (2) Witness-2 (Operations Manager successor, who opened Sham Companies and bank accounts for them) is expected to testify that, in or around 2014, a different accountant working for Moishe's Moving told him that Lingat received cash payments through the "Sham Labor Companies" and that these payments were entered into the "books" of the Sham Labor Companies as being made to "Norman Hines," a fictitious name. Gov. Mem. at 15-16. Nevertheless, the Government did provide further details regarding its expected co-conspirator statements at the pretrial conference and indicated that it would provide defense counsel with a list of the statements it intends to introduce in advance of trial.

While the two cited examples would appear to fall within the scope of Rule 801(d)(2)(E), at this juncture, the Court simply does not have enough information to rule on this motion *in limine*. *See Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F. Supp. 276, 283 (S.D.N.Y. 1996). First, the Court cannot make blanket or "categorical" rulings in advance of hearing the proffered evidence and any potential objection, or knowing the context in which the statement is offered. To that end, with respect to any particular out-of-court statement the Government seeks to introduce during the course of the trial, the defense is free to object that the statement does not meet the

conditions for the co-conspirator hearsay exclusion under Rule 801(d)(2)), should be precluded based on another evidentiary rule, or violates the Defendant's constitutional rights. As such, the Court reserves decision until trial on the admission of potential co-conspirator statements, including the two examples provided by the Government. The motion that co-conspirator statements are admissible is therefore denied without prejudice.

### III.     Evidence Concerning Lemay's Alleged Personal Tax Evasion

The Government seeks to admit evidence of Lemay's purported personal tax evasion pursuant to Rule 404(b), to show Lemay's preparation and planning for, knowledge of, and intent to commit the charged crime. Gov. Mem. at 17. Specifically, the Government intends to offer testimony and financial and business records showing that Lemay personally used a sham consulting company in 2014 and 2015 to receive additional salary from Moishe Mana's companies and falsely deducted personal expenses as business expenses on the tax returns of his sham consulting company. This scheme was originally charged in Counts Two and Three of Superseding Indictment S-1 in this case [ECF No. 26], however, those Counts were severed and transferred to the District of New Jersey for trial. [ECF No. 44]. The Government urges that the method and means used to commit the two schemes are the same: "sham companies were used in the same way because Moishe's Moving was paying both workers' salaries into sham companies to evade its payroll taxes (a scheme that was carried out during Lemay's tenure as President of the company) *and* paying Lemay's salary into a sham company, so that he could avoid personal taxes." Reply at 4. At the pretrial conference, the Government further urged that a common payor—in this case, Lemay—using Sham Companies in the same way to evade tax obligations is a particularly strong showing of knowledge, intent, and lack of mistake.

At the pretrial hearing, the Court inquired about the schedule for trial in the District of New

Jersey with respect to Mr. Lemay on the personal tax fraud, initially charged as Counts Two and Three of Superseding Indictment in this case, and expressed concern that this case not turn into a protracted preview of the trial on the personal tax fraud case. The Government offered assurance that it seeks only to admit, under Rule 404(b), evidence of *facts* tending to show Lemay's knowledge, intent, and lack of mistake with respect to the use of Sham Companies to avoid tax obligations. Moreover, the Government offered assurances that the evidence at issue is limited in scope. Specifically, the Government said it intends to proffer evidence only with respect to one Sham Company in connection with the alleged personal tax scheme, GM3 Enterprises ("GM3").

### A. Rule 404(b)

As previously noted, Rule 404(b)(1) precludes the admission of evidence of any other crime, wrong, or act "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, the "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). A "court can . . . admit evidence of prior acts as probative of knowledge and intent if the evidence is relevant to the charged offense, *i.e.*, if there is a similarity or connection between the charged and uncharged acts." *United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017). The evidence must be "admitted with a limited instruction if requested." *United States v. Rutkoske*, 506 F.3d 170, 176-77 (2d Cir. 2007).

A defendant's knowledge and intent are at issue unless these elements of the crime have been conceded. *See, e.g., United States v. Colon*, 880 F.2d 650, 656–57 (2d Cir. 1989) (internal citation omitted)); *see also United States v. Jones*, 858 F. App'x 420, 422 (2d Cir. 2021). To take knowledge or intent out of a case, "a defendant must make some statement to the court of sufficient

13

clarity to indicate that the issue will not be disputed." *Pitre*, 960 F.2d at 1119 (quoting *Colon*, 880 F.2d at 659). Here, knowledge and intent, which are elements of the offense with which Lemay and Lingat have been charged, are at issue in this case. Lemay and Lingat have both affirmatively stated at the pretrial conference that they dispute knowledge and intent.

The Second Circuit has frequently held that "Rule 404(b) permits admission of a defendant's past taxpaying record as circumstantial evidence of willfulness to evade taxes in subsequent years." *United States v. Scali*, 820 Fed. Appx. 23, 27-28 (2d Cir. 2020); *see United States v. Bok*, 156 F.3d 157, 166 (2d Cir. 1998) (collecting cases) ("[A] defendant's past taxpaying record is admissible to prove willfulness circumstantially."); *United States v. Klausner*, 80 F.3d 55, 63 (2d Cir. 1996) ("Patterns of understating or failing to report income are . . . considered evidence of willfulness."). The Government concedes, however, that "these cases typically involve defendants who are also charged with personal tax evasion—whereas, in this case the defendant is charged with his participation in a long-running payroll tax evasion scheme at a company he ran." Gov. Mem. at 18. The Government argues that this distinction is "immaterial to the Rule 404(b) analysis," because "the striking similarities between Lemay's alleged personal tax evasion and the charged scheme . . . show planning and preparation for and knowledge of the charged conspiracy." Gov. Mem. at 18.

Lemay disagrees, arguing that the "striking similarities" between Lemay's alleged personal scheme and the corporate scheme are "superficial, not striking: both schemes involve the use of shell companies to avoid paying taxes that are owed to the IRS." Lemay Opp. at 4 ("That is where the 'similarities' end because the shell companies in each scheme are used to evade very different taxes in very different ways."). The Government counters that the alleged personal tax evasion is sufficiently similar to the charged conduct because Lemay "committed his [alleged] personal tax

evasion and the Moishe's Moving payroll tax evasion in the same way: by incorporating sham companies and directing funds he sought to shield from taxation through those sham companies." Reply at 2. Moreover, the Government argues that Lemay's argument that his alleged "personal tax evasion is unrelated to the payroll tax evasion ignores that sham companies were used in both schemes and that *both schemes involve payments from the same company*, Moishe's Moving." Reply at 4 (emphasis added). Thus, in addition to "the overlap in timing between [Lemay's alleged] personal tax evasion scheme and the charged conduct," such evidence makes it more likely that Lemay knew and understood how to prepare and utilize Sham Companies to achieve illegal tax savings, and that "he planned, prepared, and participated in the use of the Sham Companies to benefit Moishe's Moving during the charged period." Gov. Mem. at 19. The Court agrees with the Government that evidence relating to Lemay's purported personal tax evasion to show knowledge of and intent to commit the charged crime is likely admissible under Rule 404(b)(2).

With respect to Rule 404(b)'s notice requirement, the Government argues that defense counsel has been in possession of the Indictment in this action and all discovery material for approximately two years. The Court pointed out that the notice requirement in Rule 404(b) requires that such notice be provided "*in writing* before trial," and "articulate . . . the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." Fed. R. Evid. 404(b)(3). The Court warned the Government that it would enforce this requirement at trial.

### B. Rule 403 (Prejudice vs. Probative)

As previously noted, Rule 403 provides that a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of," *inter alia*, "unfair prejudice,"

15

"confusing the issues," and/or "misleading the jury." Fed. R. Evid. 403. Evidence of prior bad acts in particular must receive careful scrutiny for prejudice since, "such evidence easily lends itself to generalized reasoning about a defendant's criminal propensity and thereby undermines the presumption of innocence." *United States v. McCallum*, 584 F.3d 471, 476 (2d Cir. 2009).

Lemay argues that the discussion of two *different* and intricate tax evasion scheme runs the risk of "confusing the issue[]" of which scheme Lemay is actually on trial for in this action. Lemay contends that "evidence of the Personal Income Tax Scheme will create an unnecessary and distracting side show and 'prolong an already complex trial.' " However, the Government has represented to the Court that such evidence requires no additional witnesses and is based entirely on documents, therefore minimizing any "distracting side show" or possible confusion. Instead, any unfair prejudicial effect of such evidence would be minimal, including because the evidence would not be "more sensational" or "disturbing" than the charged conduct. *Pitre*, 960 F.2d at 1120.

The Court finds that there is minimal risk that a jury would be unfairly shocked or influenced by a limited discussion of an alleged personal tax evasion when such evasion through the use of a sham entity is virtually identical to the charged conduct. To the extent warranted, any potentially unfair prejudice may be cured with a limiting instruction to explain the distinction between Lemay's purported personal tax evasion and the charged payroll tax evasion scheme.

## IV.  Lingat's Proffer Statements for Impeachment Purposes

The Government seeks to introduce Lingat's statements made during a proffer with the Government *if* Lingat offers evidence, testifies, or makes arguments inconsistent with those statements. Gov. Mem. at 19. Lingat participated in one proffer session with the Government, which occurred on December 3, 2018, and was conducted pursuant to the standard proffer agreement used by the U.S. Attorney's Office. Lingat was represented by counsel throughout the

proffer. According to the Government, at the beginning of the proffer, the Government explained the contours of the Proffer Agreement, including an explicit warning that if Lingat were to proceed to trial, his statements made during the proffer could be used against him *if* he made an argument that contradicted statements made during the proffer. This warning was also contained in writing in the Proffer Agreement, a copy of which was provided to defense counsel before the proffer began, and ultimately signed by both Lingat and his defense counsel. The Government attached the signed proffer to its Memorandum. *See* [ECF No. 96]. Mr. Lingat does not dispute the Government's representations.

Ordinarily, a "statement made during plea discussions with an attorney for the prosecuting authority" that does not result in a guilty plea is not admissible against the defendant who made the statement. Fed. R. Evid. 410(a)(4). "The protections provided by Rule 410, however, can be waived, including in a proffer agreement with the government, provided that such waiver is knowing and voluntary." *United States v. Lyle*, 919 F.3d 716, 732 (2d Cir. 2019). The provisions of the Proffer Agreement at issue here—which permit the Government to cross-examine the defendant with his proffer statements and to use those statements to rebut contrary arguments made by the defense—have been upheld by the Second Circuit. *See United States v. Lyle*, 919 F.3d 716, 732-33 (2d Cir. 2019); *United States v. Velez*, 354 F.3d 190, 196 (2d Cir. 2004) (noting that "fairness dictates that the [proffer] agreement be enforced" because otherwise "a defendant will have less incentive to be truthful, for he will know that his proffer statements cannot be used against him at trial as long as he does not testify, even if he presents inconsistent evidence or arguments.").

In determining whether to admit inconsistent proffer statements, the first question the district court must ask is "whether the defendant has offered any evidence or made a *factual*

*assertion* that would trigger the Rule 410 waiver," and "if so, whether the proffer statement 'fairly rebut[s]' *the fact asserted* or evidence offered or elicited." *Lyle*, 919 F.3d at 732. If the waiver has been triggered and the proffer statement properly rebuts the assertion triggering the waiver, the government may offer the proffer statement. *Id*. The Second Circuit has recognized, however, that a defense argument does not trigger a waiver if it "simply challenge[s] the sufficiency of government proof on [the] elements." *Id*. (quoting *United States v. Barrow*, 400 F.3d 109, 119 (2d Cir. 2005)); *United States v. Rosemond*, 841 F.3d 95, 107 (2d Cir. 2016) ("[T]he proffer agreement does not bar a defendant from arguing that the Government has failed to meet its burden of proof."); *see also United States v. Roberts*, 660 F.3d 149, 158 (2d Cir. 2011) ("Particular caution is required when the purported fact is asserted by counsel rather than through witness testimony or exhibits."). In other words, "[q]uestioning witnesses about prior inconsistent statements challenges the witness's credibility but does not mandate a conclusion that the witness's testimony is *factually inaccurate*." *United States v. Booker*, 825 F. App'x 4, 10 (2d Cir. 2020).

The above legal landscape indicates that any sort of *in limine* ruling on this motion would be premature at this time. The Court cannot rule until it has the information necessary to determine whether the waiver has been triggered and whether the proffered statement is factually inconsistent with the fact asserted or evidence elicited at trial, and the Government concedes that this motion only becomes relevant *if* Lingat puts forward "evidence, arguments or testimony inconsistent with [his] proffer statements." Reply at 14. Accordingly, the Court reserves decision on the admission of any proffer statements if and until the issue arises at trial. If the Government believes the defense has opened the door to admission of Lingat's proffer statements, the Government shall notify the Court and counsel outside the hearing of the jury before seeking to introduce those statements. At this juncture, however, the motion is denied without prejudice.

Moreover, to the extent that any of Lingat's admitted proffer statements reference or incriminate Lemay, they should be presented to the jury with appropriate modifications to avoid directly identifying Lemay and accompanied by a limiting instruction that instructs jurors to consider the statements with respect to Lingat alone. *United States v. Lyle*, 919 F.3d 716, 733 (2d Cir. 2019) (finding prejudice may be avoided by a "non-obvious redaction" that removes "any references to the [non-testifying] defendant"); *United States v. Collins*, No. 21-1291, 2023 WL 309605, at *3 (2d Cir. Jan. 19, 2023), *cert. denied sub nom. Ramirez v. United States*, 144 S. Ct. 157 (2023), *and cert. denied*, 144 S. Ct. 172 (2023).

## CONCLUSION

The Clerk of Court is respectfully requested to close the motion at ECF No. 96.

**SO ORDERED.**

*[Signature]*

**Date: March 11, 2024**          **MARY KAY VYSKOCIL**
**New York, NY**                  **United States District Judge**