USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/2/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                          Plaintiff,

          -against-

JOSEPH EUGENE LEMAY,

                          Defendant.

1:21-cr-00573 (MKV)

**OPINION AND ORDER
DENYING DEFENDANT'S
RULE 33 MOTION**

MARY KAY VYSKOCIL, United States District Judge:

After a nine-day jury trial, Defendant Joseph Eugene Lemay was convicted of one count of conspiracy to defraud the United States, specifically, the Internal Revenue Service ("IRS"), in violation of Title 18, United States Code, Section 371. Six months after the verdict, Defendant moved pursuant to Rule 33 of the Federal Rules of Criminal Procedure for a new trial based on claims of alleged ineffective assistance of counsel. [ECF No. 239]. For the reasons discussed below, Defendant's Rule 33 motion is DENIED.

## PROCEDURAL BACKGROUND

In October 2021, a grand jury returned a three-count superseding indictment, S1, charging Mr. Lemay with conspiracy to defraud the IRS in violation of Title 18, United States Code, Section 371, and two counts of tax evasion in violation of Title 26, United States Code, Section 7201. [ECF No. 26]. The two counts of tax evasion in violation of Title 26, United States Code, Section 7201, were severed and transferred to the District of New Jersey, based on Mr. Lemay's place of residence at the time the offenses were committed. [ECF No. 44]; Case No. 2:21-cr-00937-SB (D.N.J.). Thereafter, Mr. Lemay pled guilty to the two counts of tax evasion in the District of New Jersey, 2:21-cr-00937-SB (D.N.J. Sept. 11, 2024) [ECF Nos. 40, 41], and was sentenced in January 2025 to 21 months imprisonment on each count to be served concurrently, followed by two years

1

of supervised release on each count to be served concurrently.  2:21-cr-00937-SB (D.N.J. Jan. 28, 2025) [ECF Nos. 48, 49].

In the interim, a grand jury in this District returned a single-count superseding indictment, S2, charging Mr. Lemay and co-defendant Joel Lingat with conspiracy to defraud an agency of the United States, in violation of Title 18, United States Code, Section 371.  [ECF No. 71, (the "Indictment")].  In particular, the Indictment charges that Messrs. Lemay and Lingat willfully and knowingly conspired and agreed to defraud the United States by participating in a scheme to evade federal income and payroll taxes that should have been paid by their employer.  Indictment at 2.

At the close of the Government's case at trial against Messrs. Lemay and Lingat, Mr. Lingat moved pursuant to Rule 29 of the Federal Rules of Criminal Procedure for a judgment of acquittal. [ECF No. 171, ("Trial Tr.") 842:9].  Mr. Lemay joined in the motion, *id.*, which the Court denied. Trial Tr. 845:14–23.  Thereafter, on April 15, 2024, the jury convicted both Mr. Lemay and Mr. Lingat, each of one count of conspiracy to defraud the United States, in violation of Title 18, United States Code, Section 371.  [ECF No. 154].  Defendants subsequently renewed their Rule 29 Motion seeking reconsideration of the Court's prior denial of judgment as a matter of law. [ECF Nos. 177, 178].  The Court denied Defendants' motion.  [ECF No. 191].

Mr. Lingat was sentenced on August 19, 2024.  [ECF No. 202].[1]  Mr. Lemay's counsel, Mr. Creizman, sought multiple adjournments of Mr. Lemay's sentencing for various reasons.  *See* [ECF Nos. 183, 207, 216].  On September 20, 2024, in response to an Order from the Court, Mr. Creizman submitted a five-page letter on behalf of Mr. Lemay regarding the appropriate amount of restitution to be imposed on Mr. Lemay at sentencing.  [ECF No. 215].  Then on October 17,

---

[1] Mr. Lingat appealed his judgment of conviction, [ECF No. 211], and the Second Circuit affirmed.  *See United States of America, v. Joseph Eugene Lemay, Joel Lingat*, No. 24-2328-CR, 2025 WL 1873404 (2d Cir. July 8, 2025) (summary order).

2024, Mr. Creizman submitted a 75-page sentencing submission on behalf of Mr. Lemay. [ECF No. 221]. Mr. Creizman also submitted a declaration attaching 62 exhibits. [ECF No. 222].

At the end of the weekend immediately after his sentencing submission was filed, on October 20, 2024, Mr. Lemay through newly retained counsel, Mr. Lieber, [ECF No. 223], filed a letter motion requesting a conference prior to Mr. Lemay's sentencing. [ECF No. 224, ("Pre-Motion Letter")]. This request concerned counsel's belief that the Court should set aside the verdict on the ground that both of Mr. Lemay's prior lawyers had "significant conflict[s] of interest that severely compromised Mr. Lemay's right to a fair trial." *Id.* The Court, recognizing the seriousness of these allegations, promptly issued an Order directing the Government to respond, and ordered the parties to appear for a conference. [ECF Nos. 225, 227]. The Government filed its response, [ECF No. 230], and thereafter he Court held a conference. At the conference, the Court discussed with the parties the seriousness of the allegations made in Mr. Lemay's pre-motion Letter. [ECF No. 234, ("Conference Tr.")]. The Court set a briefing schedule for Defendant's anticipated Rule 33 Motion, [ECF No. 231], and explicitly directed the parties to include with their briefing all the evidence that substantiated their positions. *Id.* Mr. Lemay subsequently filed an informed-consent waiver of his attorney-client privilege with his former attorneys, including Mr. Creizman, Ms. Madrigal, and Mr. Agostino, in order to proceed with his Rule 33 Motion. [ECF No. 238].

In his motion to vacate the verdict pursuant to Rule 33 of the Federal Rules of Criminal Procedure, Mr. Lemay argues that the verdict should be set aside and a new trial should be ordered because he was denied effective representation by reason of alleged undisclosed conflicts of interest of his two prior attorneys. [ECF No. 239, ("Def. Mem.") at 2–3]. The Government opposed the motion and filed supporting materials. [ECF Nos. 242–244, 250]. The Government

argues that Mr. Lemay's Rule 33 motion is untimely, and urges that even if it were timely, the motion is without merit because Mr. Lemay's counsel was not conflicted. [ECF No. 250, ("Gov. Opp.") at 5]. Without leave from the Court, Mr. Lemay filed a letter in response to the Government's Opposition. [ECF No. 251, ("Def. Reply")].

After reviewing the motion, briefing, and evidentiary record, the Court determined that an evidentiary hearing to assess witness credibility could be helpful prior to ruling on the motion because there appeared to be conflicts in the record. [ECF No. 256]. In particular, these conflicts arose from assertions made in the affidavits and declarations submitted in support of and in opposition to Mr. Lemay's Rule 33 motion. *Id.* A conference was scheduled for June 9, 2025. *Id.* The Court explicitly stated that at this evidentiary hearing the parties would be permitted to cross-examine any witness who had submitted direct testimony, *i.e.* a declaration or affidavit, in support of or in opposition to Mr. Lemay's Rule 33 motion. *Id.*

Shortly thereafter, Defendant requested a conference prior to the evidentiary hearing, at "the earliest date that the Court [could] provide[,]" to discuss "several important issues" that had arisen. [ECF No. 257]. Given the serious nature of Mr. Lemay's motion, the Court granted Defendant's request. [ECF No. 258]. At the conference, counsel for Defendant asked the Court, among other things, if the Court was "permitting [Defense Counsel] to subpoena other witnesses who are not in my part of my affidavit [sic] . . . ." [ECF No. 261, ("Conf. Tr.") 10:25–11:2]. The Court clearly denied counsel's request at the conference and stated that expanding the record beyond what had already been submitted in connection with the Rule 33 Motion was not permitted. *See* Conf. Tr. 21:4–7 (we are "having a hearing in case either side wishes to cross-examine the affiants or the declarants on the pending record" and so the Court "can assess credibility."). The Court concluded this conference by warning the parties in connection with the upcoming

evidentiary hearing that if their submissions went "beyond what the proper scope [was], the witnesses [would] be precluded." Conf. Tr. 24:13–15.

Thereafter, in accordance with the Court's prior Order, counsel for Defendant and the Government filed letters identifying the individuals who had submitted declarations or affidavits in connection with the defendant's Rule 33 motion whom they intended to cross-examine at the evidentiary hearing. [ECF Nos. 259, 260]. As previously ordered, the parties also delivered to the Court binders with hard copies of the parties' witness lists and exhibit lists. However, for the first time, the hard-copy binder submitted by Defendant also identified as potential witnesses James J. Mahon, Esq., counsel for Mr. Lemay's co-defendant, who had not submitted a declaration or affidavit in connection with Defendant's Rule 33 motion, and Mr. Lemay himself. Subsequently, Mr. Mahon filed a motion to quash the subpoena requiring his attendance at the evidentiary hearing, [ECF No. 263], which the Court granted, [ECF No. 266].

On June 9, 2025, the Court held an evidentiary hearing on Mr. Lemay's Rule 33 Motion, [ECF No. 271, ("Evid. Hr'g Tr.")], at which Mr. Lieber cross-examined Messrs. Agostino and Creizman, former counsel to Mr. Lemay. The Government did not cross-examine Mr. Lemay on his testimony in his affidavit in support of his motion. After the hearing, Mr. Lieber, again without leave of the Court, submitted a "supplemental submission in further support" of his motion. [ECF No. 270].

## FACTUAL BACKGROUND

According to Mr. Lemay, in June 2018, Moishe Mana, the majority-owner of Mr. Lemay's employer, Moishe's Moving, approached Mr. Lemay and told him that one of Mr. Mana's attorneys, Mr. Skarlatos, a partner at Kostelanez Fink, would supply Mr. Lemay with an attorney in connection with an ongoing investigation, and Mr. Mana would pay the bills. [ECF No. 239-1], ("Lemay Aff.") ¶ 1]. Mr. Agostino attests that he was referred to Mr. Lemay by Mr. Skarlatos

and subsequently executed a written engagement letter establishing Mr. Lemay as his client. [ECF No. 242, ("Agostino Decl.") ¶ 3(a)]. Pursuant to the executed engagement letter, Mr. Lemay was fully responsible for all fees and costs, but in their first meeting Mr. Lemay alerted Mr. Agostino that he had an arrangement with Mr. Mana regarding the funding of his legal fees. Agostino Decl. ¶¶ 3(b)–(c), 4(a), 10(a)–(b). On cross-examination at the evidentiary hearing, Mr. Agostino confirmed that he was told by Mr. Lemay in their initial conference that Mr. Lemay was going to be reimbursed by Mr. Mana for his legal fees, but not that Mr. Mana was going to be paying Mr. Agostino or his firm. Evid. Hr'g Tr. 12:2-5, 13:3-9.

Mr. Lemay claims that Mr. Agostino never asked the Government for a plea agreement and never spoke to Mr. Lemay about reaching out to the Government to try to cooperate. Lemay Aff. ¶ 3. Mr. Agostino claims that Mr. Mana's lawyers had stated that the statute of limitations foreclosed any prosecution of Mr. Mana for tax evasion, rendering, in Mr. Agostino's view, any potential cooperation by Mr. Lemay of little to no value to the Government. Agostino Decl. ¶ 6(c). Further, Mr. Agostino asserts that no plea or cooperation offers were ever made by the Government. Agostino Decl. ¶ 10(c)-(d). Mr. Agostino further testified on cross-examination that when he went to the United States Attorney's Office, pre-indictment, to proffer defenses on behalf of Mr. Lemay, lead counsel for the Government, Ms. Kamal, did not ask or indicate any interest in having Mr. Lemay come speak with her. Evid. Hr'g Tr. 23:9-25-24:1-10. Mr. Agostino further attests that Mr. Lemay never discussed any wrongdoing by Mr. Mana and that at all times Mr. Lemay maintained his innocence. Agostino Decl. ¶ 10(c)–(d). Mr. Agostino also testified at the evidentiary hearing that he discussed exploring a potential guilty plea with Mr. Lemay and Mr. Lemay responded that he was innocent. Evid. Hr'g Tr. 63:18-22.

Mr. Lemay claims that he began to have concerns and expressed a lack of confidence in Mr. Agostino because of his firm's apparent lack of resources and because Mr. Agostino reported frequently to Mr. Skarlatos and continued to share information with him after Mr. Lemay asked Mr. Agostino to stop. Lemay Aff. ¶ 4. On re-cross-examination, Mr. Agostino testified that it was "[a]bsolutely untrue" that Mr. Lemay asked him numerous times not to speak to Mr. Skarlatos. Evid. Hr'g Tr. 8-10. Mr. Agostino further testified, both in his declaration and at the evidentiary hearing, that any meetings or discussions with representatives of Moishe's Moving were conducted with Mr. Lemay's knowledge and consent, and were conducted under a joint defense arrangement designed to coordinate discovery, reduce costs, and organize document review. Agostino Decl. ¶¶ 4(b)–(d), 5(a)–(c); Evid. Hr'g Tr. 60:17-25-66:13, 67:8-10. Mr. Agostino's declaration does not provide much information with respect to this purported "joint defense agreement," but states that "communications with the Kostelanetz firm were conducted under the joint defense arrangement." Agostino Decl. ¶ 4(d). Further, on cross-examination, Mr. Agostino testified that he explained to Mr. Lemay what a joint defense agreement is and that in this specific situation there were "databases [and other] information complied and maintained by the Kostelanetz firm" and that "it was in [Mr. Lemay's] interest to have access to that information." Evid. Hr'g Tr. 50:4-25-51:1-5. Mr. Lemay claims that Mr. Agostino hired FTI Consulting against his wishes because Mr. Skarlatos referred them and so Mr. Agostino had to utilize their services. Lemay Aff. ¶ 5. Mr. Agostino disagrees with this characterization and asserts that his firm, and not Mr. Skarlatos, recommended FTI Consulting. Agostino Decl. ¶¶ 7(a)–(c).

Mr. Lemay asserts that he no longer wanted Mr. Agostino to represent him because of the aforementioned issues, specifically the fact that Mr. Agostino was reporting information to Mr. Skarlatos after Mr. Lemay asked him to stop. Lemay Aff. ¶ 6. Mr. Agostino contests this

description and asserts that he, and his firm, withdrew as counsel because of repeated delays in payment and their perception that neither Mr. Lemay nor Mr. Mana would properly fund trial preparation or trial. Agostino ¶¶ 3(d), 8(a)–(b). The Court's independent review of the docket confirms that, in his declaration in support of his motion to withdraw as Mr. Lemay's counsel, Mr. Agostino attested that he and Mr. Lemay were "not able to reach a mutually agreeable fee arrangement for trial preparation and trial." [ECF No. 99–1]. The Court notes that Mr. Lemay did not contemporaneously dispute this assertion. Nor did he oppose Mr. Agostino's withdrawal.

This Court's Individual Rules clearly state thst "[w]henever defense counsel has received, or will receive, a benefactor payment that subjects counsel to a conflict of interest, he or she must immediately inform the Court and request a Curcio hearing." *See* Individual Rules of Practice in Criminal Cases Rules 2(A). Mr. Agostino's declaration does not address his failure to follow this directive in my Individual Rules, but on cross-examination he testified that "[i]n hindsight, there would have been a benefactor payment" and he "would have wanted [his] firm to disclose that when it ripened into a criminal case before this court." Evid. Hr'g Tr. 29:1-3. However, Mr. Agostino also testified that nonetheless there was no *Curcio* issue here and he was loyal to Mr. Lemay. Evid. Hr'g Tr. 29:7-11, 53:9-14. Mr. Agostino further testified that his interests never diverged from Mr. Lemay's with respect to any factual or legal issue or course of action (aside from Mr. Agostino's withdrawal). Evid. Hr'g Tr. 62:18-23.

After Mr. Agostino's withdrawal, Mr. Lemay allegedly was referred to Eric Creizman, Esq., of Morrison Cohen LLP, by Harold Levine, Esq., another lawyer who worked for Mr. Mana. Lemay Aff. ¶ 8. Mr. Lemay states that he was given an ultimatum by Mr. Mana that Mr. Lemay retain Mr. Creizman or Mr. Mana would "not pay for anyone else." Lemay Aff. ¶ 8. Mr. Creizman attests he had no knowledge of Mr. Levine or Mr. Mana arranging his retention or declaring an

ultimatum. [ECF No. 244, ("Creizman Decl.") ¶¶ 8, 10]. To Mr. Creizman's knowledge, he was referred to Mr. Lemay by Mr. Reemer of DLA Piper. Creizman Decl. ¶¶ 8, 10. Mr. Creizman testified that he had no contact with Mr. Mana, or his attorneys Mr. Levine and Bruce Fischman, Esq., until after Mr. Creziman's firm was retained. Creizman Decl. ¶¶ 8, 10.

Mr. Creizman's recollection is that Mr. Lemay told him that Mr. Lemay was personally capable of paying the legal fees. Creizman Decl. ¶ 11. Mr. Creizman also asserts that he specifically asked Mr. Lemay if Mr. Mana's business had Directors and Officers Insurance or if they would be paying Mr. Lemay's fees, and in response, Mr. Creizman was not promised that Mr. Mana or his business would be paying the bills. Creizman Decl. ¶ 11. Mr. Creizman also asserts that the retainer agreement between his firm and Mr. Lemay clearly states that Mr. Lemay was solely responsible for paying the legal bills and that the entirety of the $750,000 advanced payment came in the form of a wire transfer from Mr. Lemay to his firm. Creizman Decl. ¶ 12; *see* ECF No. 239–7.

Mr. Lemay, on the other hand, asserts that at all times Mr. Creizman knew that Mr. Mana would be paying his fees. Lemay Aff. ¶ 9. Counsel for Mr. Lemay spent much of the evidentiary hearing questioning Mr. Creizman about his knowledge of the circumstances surrounding the initial $750,000 advanced payment and whether he knew that the payment was allegedly funded by Mr. Mana. *See, e.g.*, Evid. Hr'g Tr. 90:7-25, 91:1-20. Mr. Creizman denied having any knowledge outside of the fact that Mr. Lemay had wired from his personal account to Mr. Creizman's firm the $750,000 advanced payment deposit. *Id.* There was no documentary evidence presented at the hearing to demonstrate that Mr. Creizman had any further knowledge.

Mr. Creizman testified in his declaration that with the consent of Mr. Lemay, Mr. Mana's business funded the retention of a jury consultant to stage a mock trial in February 2024, resulting

in two $41,000 payments made by Mr. Mana's business to cover that cost. Creizman Decl. ¶ 13. Finally, Mr. Creizman also asserts that in March 2024, he pressed Mr. Lemay for additional funds and Mr. Lemay arranged for Mr. Creizman to receive that month three separate payments from one of Mr. Mana's companies in the amounts of $267,194, $42,607.28, and $500,000. Creizman Decl. ¶ 14.

Neither Mr. Creizman nor his colleague Ms. Madrigal alerted the Court to the fact that they had received, or would be receiving, payments from Mr. Mana (or his companies) in connection with the representation of Mr. Lemay. Mr. Lemay also did not inform the Court of any such arrangement. Finally, it does not appear that the Government was aware of this arrangement until post-trial when, on the eve of sentencing, Mr. Lemay's newly-retained third counsel filed his Pre-Motion Letter arguing that Lemay's conviction should be set aside because of conflicts of his prior counsel.

Mr. Creizman and Ms. Madrigal claim that they did not consider the funds paid by Mr. Mana or his businesses to be benefactor payments which required notice to the Court and a *Curcio* hearing pursuant to the Court's Individual Rules because at the time they were retained by Mr. Lemay, Mr. Mana was not indicted in Mr. Lemay's case and the statute of limitations had run on any claims against him. Creizman Decl. ¶¶ 14–16; [ECF No. 243, ("Madrigal Decl.") ¶ 9]. Mr. Creizman further testified on cross-examination at the evidentiary hearing that he did not view the now-challenged funding as a benefactor payment that posed a potential conflict of interest because Mr. Lemay told him Mr. Lemay was owed that money from the Mana Organization for real estate referral work he did. Evid. Hr'g Tr. 133:11-25-134:16. Additionally, Mr. Creizman testified that it was his understanding that the Mana organization was advancing fees for everyone, other than

Rami Haim, regardless of whether they were cooperating with the Government, so the funding of Mr. Lemay's legal fees was free of any conditions.  Evid. Hr'g Tr. 134:7-16, 191:13-15-192:1-6.

Mr. Lemay states that in his first meeting with Mr. Creizman, he expressed that he did not "want Mr. Creizman to have any relationship with Bryan Skarlatos, Bruce Fischman or Moishe Mana, except for paying the actual bill."  Lemay Aff. ¶ 10.  Mr. Lemay claims that Mr. Creizman and Ms. Madrigal agreed to this and expressed total confidentiality.  Lemay Aff. ¶ 10.  Mr. Lemay further claims that at an unspecified point in time he came to learn that despite his instructions, Mr. Creizman in fact had contact with Mr. Fischman on multiple occasions.  Lemay Aff. ¶ 11. Further, Mr. Lemay states that Mr. Creizman had three extensive meetings with Mr. Mana, received questions from Mr. Mana to use during trial, and shared unspecified sensitive information and a draft copy of Mr. Lemay's sentencing brief with Mr. Fischman without Mr. Lemay's consent. Lemay Aff. ¶¶ 12–15.

Mr. Creizman and Ms. Madrigal both dispute Mr. Lemay's version of events.  Mr. Creizman alleges that Mr. Lemay never objected to his communications with Mr. Fischman and others until after Mr. Lemay was convicted and had retained Mr. Lieber.  Creizman Decl. ¶ 20. Mr. Creizman alleges that Mr. Lemay never expressed any concern about his firm sharing information or meeting with Mr. Mana or his businesses' attorneys and actually supported his firm sharing with and receiving information from these attorneys under a "joint defense agreement." Creizman Decl. ¶ 32.  Mr. Creizman testified that the joint defense agreement allowed Mr. Creizman to share information with counsel for co-defendant Mr. Lingat, lawyers for Mr. Mana and his businesses, including Mr. Fischman and Mr. Skarlatos, and counsel for other unnamed witnesses in the case.  Creizman Decl. ¶ 32.  Mr. Creizman attests that Mr. Lemay encouraged him to contact Mr. Fischman, Mr. Skarlatos, and other lawyers in the joint defense group to obtain

relevant documents and information. Creizman Decl. ¶ 33; Evid. Hr'g Tr. 187:20-25-188:1-13.

Ms. Madrigal avers that Mr. Lemay was "insistent and persistent in his request[s]" for her and Mr.

Creizman to speak to Messrs. Fischman and Skarlatos, and counsel for other witnesses in the case,

to obtain information that would be helpful and relevant to his defense. Madrigal Decl. ¶¶ 8, 14.

At the evidentiary hearing, Mr. Creizman testified on cross-examination that it is false that Mr.

Lemay directed him to speak with Mr. Fischman and Mr. Mana only about getting paid. Evid.

Hr'g Tr. 158:19-23.

Furthermore, Mr. Creizman and Ms. Madrigal both claim that Mr. Lemay was aware of

every communication that occurred throughout the representation because they regularly met with

and updated Mr. Lemay on developments in his case. Madrigal Decl. ¶ 15. Significantly, Mr.

Creizman's contact with these attorneys is set forth in bills that were sent directly to Mr. Lemay

by Mr. Creizman approximately each month. Creizman Decl. ¶¶ 34, 36. Mr. Lemay never

objected to any such contact. Creizman Decl. ¶¶ 34, 36. Mr. Creizman also asserts that he

specifically discussed the benefits of joint defense communications with Mr. Lemay, and Mr.

Lemay never expressed concern with such an agreement. Creizman Decl. ¶ 35. Various emails

from Mr. Lemay attached to Creizman's declaration make it clear that Mr. Lemay affirmatively

asked Mr. Creizman to contact Mr. Fischman or other attorneys from Mr. Skarlatos' firm.

Creizman Decl. ¶¶ 37–38. Mr. Lemay even identified information that Mr. Skarlatos and Mr.

Fischman would have that might be useful. Creizman Decl. ¶ 35. Further, Mr. Creizman claims

that he never shared any information that Mr. Lemay did not approve of in advance or that was

outside the scope of what had been agreed. Creizman Decl. ¶ 35.

Mr. Lemay asserts that Mr. Creizman never raised the idea of talking to the Government

about the possibility of cooperation. Mr. Lemay claims that it was only after Mr. Fischman

informed Mr. Creizman that Mr. Mana was not going to continue to pay Mr. Lemay's legal bills that Mr. Creizman first explored the possibility of cooperation.  Lemay ¶ 18; ECF No. 239–16. Mr. Creizman disputes Mr. Lemay's account.  Mr. Creizman claims that he discussed with Mr. Lemay multiple times prior to trial the possibility of engaging in plea negotiations, but Mr. Lemay adamantly denied having engaged in any criminal wrongdoing, denied breaking any laws, and maintained that he had no information to provide prosecutors concerning Mr. Mana, and therefore could not cooperate even if he wanted to do so.  Creizman Decl. ¶¶ 17–18; Evid. Hr'g Tr. 193:4-25-194:1-10.  Similarly, Ms. Madrigal claims that she and Mr. Creizman discussed the option of limiting Mr. Lemay's exposure by engaging in plea negotiations with the government multiple times prior to trial, but that Mr. Lemay was opposed and proclaimed his innocence.  Madrigal Decl. ¶¶ 10, 22–24.  In particular, Mr. Creizman points to an email that Mr. Lemay sent to him where Mr. Lemay explicitly states that he was "never offered a Plea Bargain" but also states "even I would had nothing to plea [sic]."  *See* Creizman Decl. ¶ 22 (quoting ECF No. 244, Ex. 2). Furthermore, Mr. Creizman alleges that Mr. Lemay repeatedly stated that he wanted to fight his case until the end even after reviewing witness statements that included incriminating statements. Creizman Decl. ¶¶ 18–19.

Mr. Creizman states in his declaration that after Mr. Lemay was found guilty at trial, he once again raised the idea of cooperation and Mr. Lemay was not interested and continued to maintain his innocence.  Creizman Decl. ¶¶ 23–24.  At the evidentiary hearing, Mr. Creizman testified that after the trial concluded, Mr. Lemay expressed concern about being sentenced to prison and so they once again discussed the possibility of cooperating with the Government.  Evid. Hr'g Tr. 195:6-16.  Mr. Creizman testified that he told Mr. Lemay to prepare a memo setting forth any information that Mr. Lemay had on Mr. Mana or anyone else with which they could approach

the Government.  Evid. Hr'g Tr. 195:10-16.  Mr. Creizman testified in response that Mr. Lemay attempted to do so, but upon review of the information Mr. Lemay provided there was no wrongdoing that was within the statute of limitations that he believed would be of interest to the Government.  Evid. Hr'g Tr. 195:17-22.

## **LEGAL STANDARD**

Under Rule 33, the Court may, in its discretion, "grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  It is the defendant's burden to prove entitlement to a new trial under this Rule.  *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009).  "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (citations omitted).  A "manifest injustice" arises when "something has occurred to interfere with the defendant's right to a fair trial."  *United States v. Yannai*, 791 F.3d 226, 242 (2d Cir. 2015).  Ultimately, a court's discretion to grant a new trial under Rule 33 "should be exercised sparingly" and only "in the most extraordinary circumstances."  *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992) (citations omitted).

Under the Sixth Amendment, "the accused shall . . . have the [a]ssistance of [c]ounsel for his defen[s]e."  U.S. Const. amend. VI.  It is fundamental that the Sixth Amendment right includes "the right to representation by conflict-free counsel."  *Eisemann v. Herbert*, 401 F.3d 102, 107 (2d Cir. 2005) (quoting *United States v. Blau,* 159 F.3d 68, 74 (2d Cir. 1998)); *see also United States v. Rogers,* 209 F.3d 139, 143 (2d Cir. 2000) ("A defendant's Sixth Amendment right to counsel includes a right to conflict-free representation.").  A conflicted representation can be the basis for an ineffective assistance claim.  *See Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).

Generally, the standard for determining whether a criminal defendant's counsel was unconstitutionally ineffective is the two-part test set forth in *Strickland v. Washington*, 466 U.S.

14

668 (1984). First, a defendant must show that his counsel's representation was deficient, falling below the objective standard of reasonableness. *See id.* at 687–88. The review encompassed in this first step is highly deferential and includes "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *see United States* v. *Rosemond*, 958 F.3d 111, 121 (2d Cir. 2020) ("This presumption is overcome only if counsel failed to act reasonably considering all of the circumstances."). Second, a defendant must establish that his counsel's errors resulted in prejudice to the defendant. *See Strickland*, 466 U.S. at 694. A defendant satisfies this second prong by proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*; *see also United States* v. *Nolan*, 956 F.3d 71, 79 (2d Cir. 2020).

However, the Supreme Court has prescribed a different framework for analyzing an ineffective assistance of counsel claim based upon an alleged conflict of interest. *See United States v. Hild*, 644 F. Supp. 3d 7, 34 (S.D.N.Y. 2022) (quoting *Cuyler*, 446 U.S. at 350) ("Unlike most claims of ineffectiveness of counsel, which are evaluated under the familiar standard established by *Strickland*, there is a separate legal framework for evaluating a claim that an attorney labored under 'an actual conflict of interest' "). The Second Circuit has outlined three categories of attorney conflicts of interest that might give rise to an ineffective assistance claim, each attended by slightly different requirements and presumptions. *See United States v. Williams*, 372 F.3d 96, 102 (2d Cir. 2004); *Burke v. United States*, No. 20-CV-4034, 2022 WL 175488, at *2 (2d Cir. Jan. 20, 2022) (summary order). The three categories of attorney conflicts recognized by the Second Circuit are "*per se*, actual, and potential" conflicts. *United States v. Guzman Loera*, 24 F.4th 144, 160 (2d Cir. 2022); *see also Williams*, 372 F.3d at 102.

A *per se* conflict is found in the limited circumstances "where trial counsel is not authorized to practice law and where trial counsel is implicated in the 'same or closely related criminal conduct' for which the defendant is on trial." *Id.*; *see also United States v. Rondon*, 204 F.3d 376, 379–80 (2d Cir. 2000). If a *per se* conflict is found an "automatic reversal without a showing of prejudice" is required in response to an ineffective assistance claim. *United States v. John Doe No. 1*, 272 F.3d 116, 125 (2d Cir. 2001).

A potential conflict is found when "the interests of the defendant could place the attorney under inconsistent duties in the future." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004); *see also Blau,* 159 F.3d at 74 (describing a potential conflict as "[a] defendant who is faced with the possibility that his attorney might become conflicted"). If a defendant demonstrates a potential conflict of interest, then he must demonstrate "both deficient performance by counsel and prejudice, under the standard established in *Strickland*." *John Doe No. 1*, 272 F.3d at 125.

Finally, an actual conflict is found "when the interests of a defendant and his attorney diverge with respect to a material factual or legal issue or to a course of action." *Ventry v. United States*, 539 F.3d 102, 111 (2d Cir. 2008) (quoting *Williams*, 372 F.3d at 102) (internal quotations omitted). "[O]nce the defendant establishes that there was an actual conflict, he need not prove prejudice, but simply that a 'lapse in representation' resulted from the conflict." *United States v. Iorizzo,* 786 F.2d 52, 58 (2d Cir. 1986) (quoting *Cuyler,* 446 U.S. at 349); *see also Armienti v. United States*, 313 F.3d 807, 811 (2d Cir. 2002). To prove a lapse in representation, a defendant must "demonstrate that some 'plausible alternative defense strategy or tactic might have been pursued,' and that the 'alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.' " *United States v. Levy,* 25 F.3d 146, 157 (2d Cir. 1994) (quoting *Winkler v. Keane,* 7 F.3d 304, 307 (2d Cir. 1993)).

**DISCUSSION**

## I.    Timeliness of Defendant's Rule 33 Motion

As an initial matter, the Court considers the Government's objection to the timeliness of Defendant's Rule 33 motion.  Rule 33 of the Federal Rules of Criminal Procedure is "the proper procedural avenue for [a] defendant[] who wishes to raise ineffective assistance of counsel claims after conviction but prior to sentencing."  *United States v. Brown*, 623 F.3d 104, 113 n.5 (2d Cir. 2010).  Rule 33 states that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  The rule includes specific time requirements.  "Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty."  Fed. R. Crim. P. 33(b)(1).  "Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty."  Fed. R. Crim. P. 33(b)(2).

### A.    Defendant Cannot Seek Refuge Under the Rule 33(b)(1) Three Year Time Limit Because His Ineffective Assistance Claim Is Not Governed by Rule 33(b)(1)

In an attempt to take advantage of the more generous three-year time for filing, Mr. Lemay argues that there is new evidence here that would permit the Court to consider his motion as timely under Rule 33(b)(1) even though it was filed more than six months after the verdict.  Def. Mem. at 6.  New counsel asserts that Mr. Lemay's prior attorneys knew that Mr. Mana was paying Mr. Lemay's legal fees and despite knowing this, neither attorney followed this Court's Individual Rules of Practice in Criminal Cases requiring defense counsel who "has received, or will receive, a benefactor payment that subjects counsel to a conflict of interest" to "immediately inform the Court and request a Curcio hearing."  Def. Mem. at 6.  Mr. Lemay states that he only became aware of the Court's "Benefactor Payments" Rule when his new counsel was preparing to enter the case post-verdict and on the eve of sentencing.  Def. Mem. at 6.  He argues that this should be

considered as new evidence for purposes of the Rule 33 motion. Def. Mem. at 6. The Government argues that Mr. Lemay learning of the Court's Rule and his subsequent ineffective assistance of counsel claim based on that Rule is not newly discovered evidence under Rule 33. Pl. Opp. at 32.

The Second Circuit has made clear that

> [r]elief under Rule 33 based on newly discovered evidence may be granted only upon a showing that '(1) the evidence [was] newly discovered after trial; (2) facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal.'

*United States v. Forbes*, 790 F.3d 403, 406–07 (2d Cir. 2015) (quoting *United States v. Owen*, 500 F.3d 83, 87–88 (2d Cir. 2007).

Mr. Lemay's motion does not raise new "evidence," nor does it specifically address any of the relevant factors the Second Circuit has delineated. Even if it did address these factors, the motion would not pass muster because the newly discovered "evidence" (the Court's Individual Rules of Practice in Criminal Cases) would not "likely result in an acquittal," since the Court's Rules are not evidence and do not go to Defendant's underlying guilt or innocence. *See United States v. Dukes*, 727 F.2d 34, 39–40 (2d Cir. 1984) ("All of these alleged errors go to the tactical decisions made by [Defendant's] lawyer . . . [n]one cites to newly discovered evidence going to [Defendant's] innocence or guilt."); *see also Knowles v. United States*, No. 11-CR-630, 2022 WL 999078, at *23 (S.D.N.Y. Mar. 30, 2022) (quoting *United States v. Gambino*, 59 F.3d 353, 364 (2d Cir. 1995) ("[N]ewly discovered evidence must be of a sort that could, if believed, change the verdict.")).

Furthermore, the Second Circuit has consistently held that ineffective assistance of counsel claims are not governed by Rule 33(b)(1). *See United States v. Cammacho*, 462 F. App'x 81, 82

(2d Cir. 2012) (summary order) (quoting *United States v. Castillo*, 14 F.3d 802, 805 (2d Cir. 1994)

("[I]neffective assistance claims do not present new evidence within the meaning of Rule 33.");

*see also United States v. Mostafa*, No. 19-2520, 2021 WL 4771837, at *2 (2d Cir. Oct. 13, 2021)

(summary order) (Defendant's "ineffective assistance claims do not present new evidence within

the meaning of Rule 33.").

Therefore, Defendant's ineffective assistance of counsel claim is not rendered timely under

subsection 33(b)(1).

### B. *Defendant's Motion Is Untimely Under Rule 33(b)(2)*
###   *Which Governs Defendant's Ineffective Assistance Claim*

Rule 33 also permits a court to vacate any judgment and grant a new trial based "on any

reason other than newly discovered evidence," but requires that the motion be "filed within 14

days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). The guilty verdict in this

case was entered on April 15, 2024. Mr. Lemay's pre-motion letter was filed on October 20, 2024

and his formal Rule 33 Motion was filed on November 27, 2024. The time between the verdict

and Mr. Lemay's Pre-Motion Letter is approximately six months, well past the 14-day time limit

of Rule 33(b)(2). As such, the motion is clearly untimely under Rule 33(b)(2).

### C. *Rule 45(b) Excusable Neglect*

Rule 45 of the Federal Rules of Criminal Procedure states that "[w]hen an act must . . . be

done within a specified period, the court on its own may extend the time, or for good cause may

do so on a party's motion made . . . (B) after the time expires if the party failed to act because of

excusable neglect." Fed. R. Crim. P. 45(b)(1)(B). Rule 33 is "subject to the time-modification

provisions of Rule 45(b) of the Federal Rules of Criminal Procedure." *United States v. Owen*, 559

F.3d 82, 83–84 (2d Cir. 2009) (citing *Eberhart v. United States*, 546 U.S. 12, 13 (2005); *see also*

*United States v. Robinson*, 430 F.3d 537, 541 (2d Cir. 2005) ("The time limitations specified in

Rule 33 are read in conjunction with Rule 45, which establishes how to compute and extend time.").

The Second Circuit has set forth four factors that the district court should consider in determining whether the "excusable neglect" standard has been met: "(1) the danger of prejudice to the party opposing the extension; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the party seeking the extension; and (4) whether the party seeking the extension acted in good faith." *Anderson v. Beland (In re American Express Fin. Advisors Secs. Litig.)*, 672 F.3d 113, 129 (2d Cir. 2011) (internal quotation marks and citations omitted); *see also United States v. Kidd*, No. 22-CR-287, 2023 WL 7290904, at *3 (2d Cir. Nov. 6, 2023) (summary order), *cert. denied*, __ U.S. __, 144 S. Ct. 2645 (2024). "Excusable neglect is not easily demonstrated, nor was it intended to be." *Knowles v. United States*, No. 11-CR-630, 2022 WL 999078, at *22 (S.D.N.Y. Mar. 30, 2022) (quoting *United States v. Williams*, No. 10-CR-622, 2017 WL 5483744, at *3 (E.D.N.Y. Nov. 15, 2017)). The decision whether to grant an extension is within the district court's discretion. *See, e.g.*, *United States v. Owen*, 559 F.3d 82, 84 (2d Cir. 2009) ("We conclude that, under these circumstances, where the Rule 33 motion is still pending before the District Court, the District Court is in the best position to decide, in the exercise of its informed discretion, whether [defendant's] motion was timely under Rule 33 and Rule 45(b).").

A review of the four factors outlined by the Second Circuit make clear that Mr. Lemay has not satisfied the standard for excusable neglect. First, the Government argues, and the Court agrees, that the Government would be prejudiced if the Court were to grant a belated extension based on excusable neglect. Mr. Lemay's delayed Rule 33 motion has both significantly delayed his (already adjourned at his request) sentencing and, if a new trial were to be granted, there is a

risk of the degradation of witnesses' memories and unavailability of witnesses as time passes.  *See United States v. Berry,* No. 20-CR-84, 2022 WL 17336512, at *6 (S.D.N.Y. Nov. 30, 2022), *aff'd*, No. 22-3207-CR, 2024 WL 2232465 (2d Cir. May 17, 2024) (summary order) (finding prejudice because defendant's motion was filed three weeks prior to his sentencing date which had already been adjourned at his request and which necessitated another adjournment); *United States v. Ketabchi*, No. 17-CR-243-3, 2019 WL 1510444, at *2 (S.D.N.Y. Mar. 25, 2019) (explaining that granting defendant's motion would delay sentencing and acknowledging that the "the government does have a significant interest in the finality of the verdict and in getting [defendant] sentenced.") (international quotations omitted and alteration adopted); *see also United States v. Cook*, No. 13-CR-777, 2014 WL 12681367, at *1 (S.D.N.Y. Nov. 17, 2014) ("The reliability of witness testimony naturally degrades over time and thus questioning the reliability of [the witness's] testimony six months later than necessary may cause prejudice to the [g]overnment."), *aff'd sub nom. United States v. Gill*, 674 F. App'x 56 (2d Cir. 2017) (summary order); *United States v. Sabir*, 628 F. Supp. 2d 414, 417 (S.D.N.Y. 2007), *aff'd in part sub nom. United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011) (finding there was at least the possibility that the Government would be prejudiced by the three-month delay in filing because "[a]s time goes by, the likelihood of trial witnesses' becoming unavailable increases.").

Second, the length of the delay and its potential impact on judicial proceedings also weights against finding excusable neglect under Rule 45.  Mr. Lemay did not take any action until six months after the jury verdict and on the eve of sentencing—a substantial delay with a significant potential impact on the judicial proceedings in this case.  *See United States v. Dupree*, No. 10-CR-627 S-2, 2012 WL 5333946, at *33 (E.D.N.Y. Oct. 26, 2012), *aff'd*, 620 F. App'x 49 (2d Cir. 2015) (summary order) (denying defendant's claim of excusable neglect and finding his Rule 33

motion untimely in part because the "significant six-month delay"); *United States v. Urena*, No. S305-CR-0760, 2008 WL 2229847, at *2 (S.D.N.Y. May 29, 2008) (finding that excusable neglect had not been established in part because the delay of eight months was "substantial" and "[b]ecause the outcome of a second trial could be influenced by the risk of faded memories due to the passage of time, there is also an impact on judicial proceedings"); *Sabir*, 628 F. Supp. 2d at 417 (finding the length of delay of "nearly three months after the verdict in this case" weighed against finding excusable neglect); *United States v. Estevez*, No. 314-CR-001911, 2016 WL 2349099, at *3 (D. Conn. May 4, 2016) (finding a four-month delay weighed against finding excusable neglect).

Third, the reason for the delay and whether it was in the reasonable control of the movant is a closer call. Mr. Lemay argues that he was being represented by Mr. Creizman, one of the allegedly ineffective attorneys, for the entirety of the time that he delayed filing his Rule 33 motion and this justifies a finding of excusable neglect. Defs. Mem at 4-5. In support of that argument Mr. Lemay relies exclusively on *United States v. Velazquez*, 197 F. Supp. 3d 481, 509 (E.D.N.Y. 2016). The Government argues in opposition that the facts here are "readily distinguishable" from *Velazquez* because here, Mr. Lemay had all the information on which his motion is based during the entire six-month period, and there is evidence of bad faith and prejudice to the Government. Gov. Opp. at 33.

The Court acknowledges that as Mr. Lemay points out there is caselaw that finds that the continued representation by counsel against whom the defendant is bringing a Rule 33 ineffective assistance motion can support a finding of excusable neglect. *See e.g. Brown*, 623 F.3d at 113 n.5, 114–15 (weighing the fact that the counsel whom defendant was now bringing an ineffective assistance of counsel claim against was representing the defendant during the 14-day period); *see also Velazquez*, 197 F. Supp. 3d at 509 (considering as one of the relevant factors that trial counsel

represented the defendant for months following the verdict). However, that line of cases also makes clear that this fact "is just one factor for the Court's consideration." *United States v. Scali*, No. 16-CR-466, 2018 WL 3536082, at *3 (S.D.N.Y. July 23, 2018) (further explaining that there is no "blanket rule" that failure to abide the 14-day deadline "may be excused where the allegedly ineffective counsel continues representing [the] [d]efendant[,]" instead stating that "where the allegedly ineffective attorney continued to represent" the defendant "and Defendant discovered the basis of the alleged ineffectiveness outside of the 14-day" there is a "reasonable contention of excusable neglect").

Here, even though Mr. Creizman represented Mr. Lemay for the entirety of the six-month delay, unlike in *Scali* and *Velazquez* it is undisputed that Mr. Lemay was aware throughout of all of the facts that he now uses to support his ineffective assistance claim. Specifically, he was aware that some or all of his legal bills were being paid for by Mr. Mana (or his businesses), that his attorneys were communicating with Mr. Mana (or his representatives), and that no plea or cooperation agreement was discussed or sought on his behalf. *See, e.g., United States v. Bishop*, No. 12-CR-101-A, 2020 WL 210107, at *2 (W.D.N.Y. Jan. 14, 2020) (declining to find excusable neglect because the "grounds defendant [] raises in support of his motion — that his trial counsel was constitutionally ineffective because counsel did not negotiate a favorable plea agreement — were known to the defendant before trial counsel was relieved"); *United States v. Pettway*, No. 12-CR-103S (1), 2024 WL 2286255, at *7 (W.D.N.Y. May 21, 2024) (concluding that defendant did not demonstrate excusable neglect even though the allegedly ineffective trial counsel represented defendant during the 14-day period because the defendant "was aware of the basis of his ineffectiveness claims before, within, and after the 14-day period"). The Court recognizes that Mr. Lemay claims that it was not until he retained his new counsel and became aware of the Court's

Rule on benefactor payments that he fully understood that he was not being represented properly by former counsel, but the evidentiary record calls that assertion into question.  Specifically, Mr. Lemay wrote to Mr. Creizman and Ms. Madrigal back in August 2023 raising the core allegations that support his now belatedly raised Rule 33 motion at least with respect to Mr. Agostino and makes clear that Mr. Lemay was aware of these facts beginning in at least August 2023.  *See* ECF No. 244-1.

Finally, with respect to the last factor—whether the party seeking the extension acted in good faith—the Government argues persuasively that "the timing of Lemay's filing supports the conclusion that he has not acted in good faith" because Mr. Lemay allowed Mr. Creizman and Ms. Madrigal to work on his behalf during the six-month delay, where they sought and received several adjournments of his sentencing and also filed a comprehensive sentencing submission of 75 pages (with 62 exhibits) just days before his newly retained counsel filed a letter claiming ineffective assistance.  Gov. Opp. at 33 (citing [ECF Nos. 221, 222]).  The Government argues that the Court therefore has "ample basis to conclude that Lemay's motion is simply an attempt to delay sentencing and avoid incarceration for as long as possible."  Gov. Opp. at 34.  Besides asserting that his new counsel "acted in good faith and came up to speed quickly," Def. Mem. at 4, Mr. Lemay does not address whether he acted in good faith in seeking this belated extension.  *See* Def. Mem at 4; *see also* Def. Reply.  Here, after several adjournments requested by Mr. Lemay, *see* [ECF Nos. 183, 207, 216], his sentencing was rescheduled for October 31, 2024 and then one week before his sentencing was set to take place and a few days after Mr. Creizman filed an extensive sentencing submission on his behalf, Mr. Lemay revealed that he had retained new counsel and filed a letter raising for the first time this ineffective assistance claim.  The timing of this conduct appears consistent with a pattern by Mr. Lemay to delay sentencing and is suggestive of less than

good faith. *See United States v. Midyett*, No. 07-CR-874, 2010 WL 1992191, at *1 (E.D.N.Y. May 14, 2010) (concluding that the defendant's Rule 33 motion was untimely and could not be deemed timely due to Rule 45 because the defendant's untimely motion was filed 15 days before the defendant was scheduled to be sentenced and the factual basis upon which the defendant moved for a new trial was known to the defendant before his conviction); *see also Cook*, 2014 WL 12681367, at *2 (denying as untimely Rule 29 motion filed 24 weeks after deadline and highlighting that it was made "shortly before his now rescheduled sentencing hearing").

Based on a careful weighing of the above factors, the Court finds in its discretion that Mr. Lemay has not demonstrated excusable neglect and his motion is untimely. The motion therefore should be denied on this ground alone. However, even if the Court concluded that Mr. Lemay's delay in filling his Rule 33 Motion were attributable to excusable neglect, the motion would fail on its merits for the reasons discussed below.

## II.    Defendant's Ineffective Assistance of Counsel Claim is Without Merit and Does Not Warrant Vacatur of the Jury's Verdict

As an initial matter, the Court emphasizes that it takes Mr. Lemay's allegations against his former counsel extremely seriously. Immediately after being informed about Mr. Lemay's allegations, the Court directed the Government to reply, ordered the parties to appear at a conference to discuss these allegations, allowed the parties to fully brief the issue, granted the request by Mr. Lemay's counsel for a further conference to discuss emergent issues, and thereafter conducted a full-day evidentiary hearing on Mr. Lemay's motion.

As noted, this Court's Individual Rules of Practice in Criminal Cases clearly require that "[w]henever defense counsel has received, or will receive, a benefactor payment that subjects counsel to a conflict of interest, he or she must immediately inform the Court and request a Curcio hearing." *See* Individual Rules of Practice in Criminal Cases Rules 2(A). The purpose of this rule

is to avoid the very circumstances now before the Court. However, the rule only works if defense counsel reviews the Court's Rules and adheres to them by, as applicable here, informing the Court about any third-party benefactor payments. In this case, it seems that counsel was either unaware of this Court's rule, or decided, without ever raising the issue with the Court, that the Court's rule simply did not apply to them under the circumstances. *See* Agostino Decl. ¶ 3(c); Evid. Hr'g Tr. 28:14-25-29:1-11 (Mr. Agostino admitting that his "firm may have erred" and "missed [the Court's benefactor rule] in this case" when they learned that Moishe Mana was funding Mr. Lemay's defense); Creizman Decl. ¶¶ 11-15; Evid. Hr'g Tr. 133:16-15-134:1-16 (Mr. Creizman explaining that he did not believe the Court's benefactor payment rule was triggered because Mr. Lemay told him the money from Mr. Mana and/or Mr. Mana's businesses funding his legal fees was money that was owed to Mr. Lemay for real estate referral services he had performed and additionally because the Mana organizations were advancing fees for all employees and executives regardless of their choice to cooperate with the Government so there were no conditions on the funding). The record is abundantly clear that Mr. Lemay's former counsel were all aware during the course of their representation that some or all of Mr. Lemay's legal fees were being paid for indirectly or directly by Mr. Mana or his businesses, and yet not one of these attorneys informed the Court of this situation at any point during their representation of Mr. Lemay or requested a *Curcio* hearing.

The Court admonishes Mr. Agostino, Mr. Creizman, and Ms. Madrigal for their failure to follow this Court's Individual Rules. However, since neither Mr. Lemay nor his former counsel informed the Court of any payments to counsel made by a third-party, *see, e.g.*, Def. Mem. at 6 ("[t]his is information that the Court did not know during the case or during trial"), Def. Mem at 14 ("there was never such notice to the court"), the Court's separate duty to inquire and conduct a *Curcio* hearing was not triggered and thus does not serve as a basis for vacatur. *See United States*

*v. Garcia*, No. 21-CR-412, 2024 WL 2032990, at *6 (S.D.N.Y. May 7, 2024) ("Because the Court was not aware of any alleged conflict of interest, the failure to investigate the conflict of interest and conduct a *Curcio* hearing is not a basis for granting a new trial."); *see also Cuyler*, 446 U.S. at 347 (establishing that a trial court has "a duty to inquire" only when it "knows or reasonably should know that a particular conflict exists"); *see also United States v. O'Neil*, 118 F.3d 65, 72 (2d Cir. 1997) (explaining that "the district court had no duty to conduct an inquiry" when there was only a motion to withdraw for non-payment of fees and no other sign of a possible conflict); *accord Amato v. United States*, No. 03-CR-1382-13, 2017 WL 1293801, at *13 (E.D.N.Y. Apr. 6, 2017), *aff'd*, 763 F. App'x 21 (2d Cir. 2019).

Importantly, the law is clear:  The fact that Mr. Mana and/or his businesses paid for some or all of Mr. Lemay's legal fees—a circumstance of which Mr. Lemay was fully aware and supportive—does not alone create a conflict to support an ineffective assistance of counsel claim. *See Triana v. United States*, 205 F.3d 36, 41–43 (2d Cir. 2000) (concluding that the defendant failed "to adduce evidence that [his attorney] had any actual conflict of interest" even though there was evidence of third-party funding of the defendant's defense by defendant's employer); *Douglas v. United States*, No. 08-CV-4728, 2009 WL 1322328, at *2 (E.D.N.Y. May 13, 2009) ("The mere fact of payment of counsel by a co-defendant does not, by itself, constitute a Sixth Amendment violation."); *accord Lumiere v. United States*, No. 16-CR-483, 2022 WL 866365, at *16 (S.D.N.Y. Jan. 18, 2022), *report and recommendation adopted,* No. 16-CR-483, 2022 WL 861832 (S.D.N.Y. Mar. 23, 2022).  To succeed on his Rule 33 motion Mr. Lemay must demonstrate more than just the existence of these third-party payments that went undisclosed to the Court.  Specifically, he must demonstrate either that his former counsel (1) faced a potential conflict of interest and "both deficient performance by counsel and prejudice, under the standard established in *Strickland*,"

*John Doe No. 1*, 272 F.3d at 125, or (2) labored under an actual conflict and a lapse in representation resulted from the conflict. *Iorizzo,* 786 F.2d at 58.[2]

Mr. Lemay argues in his motion that he was denied effective assistance of counsel in violation of his Sixth Amendment right because both of his prior attorneys, Mr. Agostino and Mr. Creizman, received payments from Mr. Mana (or his businesses) which allowed Mr. Mana to generally control Mr. Lemay's defense. Def. Mem. at 7-9. In particular, Mr. Lemay argues that his prior attorneys communicated with Mr. Mana and his representatives despite Mr. Lemay's instructions to stop and never pursued a plea agreement on his behalf. Def. Mem. at 7-9. The Government argues that Mr. Lemay fails to show ineffective assistance under either an actual or potential conflict. Gov. Opp. at 25-42. The Government argues that Mr. Lemay fails to show an actual conflict because he does not demonstrate that his interests diverged from his counsel's interests and that even if he could, he has not demonstrated any lapse in representation. Gov. Opp. at 35-40. The Government also asserts that "[e]ven assuming Counsel's receipt of fees from Mana or his businesses amounted to a potential conflict of interest," Mr. Lemay's claims still fail because he has not satisfied either prong of the *Strickland* test. Gov. Opp. at 42.

While Mr. Lemay's motion does not clearly assert whether he believes his former attorneys were faced with a potential conflict or labored under an actual conflict, instead merely asserting that there was a conflict that amounted to an ineffective assistance claim, the Court nonetheless finds that under either standard Mr. Lemay's Rule 33 motion must be denied.

---

[2] *Per se* conflict analysis is inapplicable here, reserved as it is for those limited situations "where trial counsel is not authorized to practice law and where trial counsel is implicated in the 'same or closely related criminal conduct' for which the defendant is on trial." *Williams*, 372 F.3d at 103.

A. *Actual Conflict*

To demonstrate an ineffective assistance of counsel claim in violation of the Sixth Amendment due to a lawyer's conflicting loyalties, Mr. Lemay must first show that "counsel actively represented conflicting interests." *Cuyler*, 446 U.S. at 350; *see also United States v. Aiello*, 814 F.2d 109, 112 (2d Cir. 1987). Counsel is actively representing conflicting interests if "during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *Winkler*, 7 F.3d at 307 (internal quotation marks omitted). Mr. Lemay bears the burden of showing that his lawyers had an actual conflict of interest. *See United States v. Miceli*, 7 F. App'x 131, 132–33 (2d Cir. 2001) ("to establish ineffective assistance of counsel, a defendant has the burden") (summary order); *see also United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004) ("petitioner bears the burden of establishing both deficient performance and prejudice"). "[T]he possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 350; *see also United States v. Feyrer*, 333 F.3d 110, 116 (2d Cir. 2003) ("[A] mere theoretical division of loyalties," however, "does not present grounds for a new trial.") (internal quotations omitted).

As an initial matter, the Court finds that the credibility of Mr. Lemay's allegations that his interests diverged from his former counsel's interests when they were communicating with Mr. Mana and representatives of Mr. Mana or his business against his knowledge and wishes is severely undermined by the evidentiary record. Mr. Lemay's direct testimony makes perfectly clear that he was aware that Mr. Agostino was in communication with representatives of Mr. Mana and his businesses. Lemay Aff. ¶ 4. Mr. Agostino's direct testimony is that "[a]ny meetings or discussions with representative of Moishe's Moving were conducted with Mr. Lemay's knowledge and consent." Agostino Decl. ¶ 4(c). Furthermore, on cross-examination Mr. Agostino testified

that at Mr. Lemay's request his firm prepared and sent Mr. Lemay two bills—one with full detailed descriptions and one with no information except the balance due—because Mr. Lemay would share the bills with someone at Moishe's Moving and "no one needed to know what we were working on." Evidentiary Hearing Tr. 48:13-24, 49:10. Furthermore, on cross-examination Mr. Agostino testified that he discussed with Mr. Lemay the benefit of engaging in a joint defense agreement and Mr. Lemay agreed to participate so that they could access documents and information that other witnesses and subjects of the Government's investigation had. Evidentiary Hearing Tr. 50:7-25-51:1-5. Mr. Agostino further testified that Mr. Lemay was not only aware of his contact with Moishe Mana's lawyers, but consented to it, and that Mr. Agostino never disclosed information to Moishe Mana or anyone working for him without Mr. Lemay's consent. Evidentiary Hearing Tr. 60:20-25-61:1, 62:14-17. The Court observed Mr. Agostino's demeanor, tone, and body language at the evidentiary hearing and found his testimony to be both reliable and credible.

The Court acknowledges that there is one pre-motion document in the evidentiary record— an email that Mr. Lemay originally sent to himself and then forwarded to Mr. Creizman and Ms. Madrigal with the subject line "Fwd: My thoughts" dated August 12, 2023—that conflicts with Mr. Agostino's testimony. ECF No. 244, Ex. 1. In this email Mr. Lemay details after the fact, to his new counsel, Mr. Creizman and Ms. Madrigal, the concerns he had about his former counsel, Mr. Agostino. Specifically, Mr. Lemay states "I have an ethical problem with Scarlatos he choose [sic] Frank Agostino spoke to him regularly about my case. What influence did he have over him?," and "I have a problem That Frank Agostino read this witness statement and didn't sever his relationship with Brian and his firm." ECF No. 244, Ex. 1. However, even assuming that Mr. Agostino and Mr. Lemay's interests diverged with respect to these ongoing communications, Mr.

Lemay's Rule 33 motion would nevertheless fail because, as discussed below, Mr. Lemay fails to demonstrate a lapse in representation by Mr. Agostino caused by this purported conflict.[3]

Similarly, Mr. Lemay now claims that he, at some unspecified time, "came to learn that Eric Creizman had contact with Mr. Fischman, Moishe Mana's attorney on multiple occasions." Lemay Aff. ¶ 11.  However, the record includes unrebutted evidence that Mr. Lemay was aware of the communications at the time they were occurring. *See e.g.*, ECF No. 244, Ex. 15 (Email from Mr. Lemay to Mr. Creizman on August 29, 2023 in which Mr. Lemay tells Mr. Creizman that "Bruce Fishman [a Mana attorney] wants you to call him"); ECF No. 244, Ex. 17 (Email from Mr. Creizman to Mr. Lemay sent on September 6, 2023 stating that Mr. Creizman "reached out to Frank, Jim, and Bruce [Mana's attorneys] for calls tomorrow . . . ").  There are even examples in the record of Mr. Creizman clearly setting up calls or forwarding emails to inform Mr. Lemay about what was discussed with these individuals during the now-complained-of interactions.  *See* ECF No. 244, Ex. 18 (Email from Mr. Creizman to Mr. Lemay sent on November 17, 2023 stating that Mr. Creizman was "talking with Bruce today at 3 pm" and suggesting that they move a previously scheduled call between Mr. Creizman and Mr. Lemay to "4 pm so that I can let you know how that went and if there are any issues coming out of that which we should address"); ECF No. 244, Ex. 19 (Mr. Creizman forwarded to Mr. Lemay an email he had received from Mr. Fischman); ECF No. 244, Ex. 20 (Email Mr. Creizman received from Mr. Fischman that he forwarded to Mr. Lemay).

Moreover, Mr. Creizman details these now-complained-of calls, emails, and meetings in the monthly bills that contemporaneously were sent directly to Mr. Lemay.  *See e.g.*, ECF No. 244,

---

[3] Further, as discussed above, that Mr. Lemay sat on any concern for over a year makes clear that this Motion is untimely and simply a tactical maneuver. *See Midyett*, 2010 WL 1992191, at *1; *see also Cook*, 2014 WL 12681367, at *2.

Ex. 5 (invoice for legal services for September 2023 sent from Mr. Creizman to Mr. Lemay on October 27, 2023 including an entry for "Telephone Conference with B. Fischman"); ECF No. 244, Ex. 7 (November 30, 2023 invoice for legal services including an entry for "Joint Defense Telephone Conference With B. Fischman . . . "); ECF No. 244, Ex. 8 (December 2023-January 2024 invoice for legal services sent from Mr. Creizman to Mr. Lemay on March 5, 2024 including numerous entries for Joint Defense calls and zoom meetings, including an entry for "Call With Kostelanetz," an entry for "Call with Brian Skarlatos' Firm," and an entry for "Call With Bruce Fischman Regarding Updates and Strategy"). The evidence in the record plainly contradicts Mr. Lemay's allegations that Mr. Creizman communicated with these individuals without Mr. Lemay's knowledge. And although Mr. Lemay now asserts that these communications occurred without his consent or over his objections, there is absolutely no evidence in the record that demonstrates Mr. Lemay raised a complaint to Mr. Creizman at the time he received the numerous emails, calls, and bills that clearly detail that these communications were occurring. Instead, the only evidence the Court has to support Mr. Lemay's allegations that Mr. Creizman spoke to these individuals without his consent are Mr. Lemay's post-verdict Rule 33 motion and supporting affidavit. Thus, Mr. Lemay has not carried his burden of demonstrating that his lawyers had an actual conflict of interest, and "the possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 350.

Nevertheless, even assuming *arguendo* that Mr. Lemay has established that his prior attorneys' interests diverged from his by virtue of counsel engaging in these communications such that there was an actual conflict, Mr. Lemay must still demonstrate that the conflict "adversely affected his lawyer's performance." *Id.* at 348. "To prove a lapse in representation, a defendant must demonstrate that some plausible alternative defense strategy or tactic might have been

pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *United States v. Malpiedi*, 62 F.3d 465, 469 (2d Cir. 1995). While "[a] movant need not allege that the outcome of his trial would have been different[,] a plausible defense strategy is a strategy that could have been pursued even if, in all likelihood, it would have failed." *Curshen v. United States*, 596 F. App'x 14, 16 (2d Cir. 2015) (summary order).

Although Mr. Lemay's motion is not abundantly clear, it appears that Mr. Lemay primarily argues that as a result of these payments and allegedly surreptitious communications, Mr. Mana was able to "control the narrative of Mr. Lemay's defense," Def. Mem. at 9, and that caused Messrs. Agostino and Creizman to not pursue on his behalf a cooperation or plea agreement with the Government. Def. Mem. at 7, 10, 13. However, the Second Circuit has already rejected the argument that an attorney's conflict "might have prevented [him] from pursuing a plea bargain" as "evidence of ineffective assistance of counsel when the record does not contain evidence that [a plea] might have been offered." *Eisemann*, 401 F.3d at 109 (citing *Burger v. Kemp*, 483 U.S. 776, 785–89 (1987)). On the record before the Court there is no evidence that a cooperation or plea agreement of any kind was ever contemplated or offered to Mr. Lemay by the Government and thus an ineffective assistance claim based on Mr. Lemay's counsel's failure to pursue this option fails. *See Pepe v. Walsh*, 542 F. App'x 54, 55 (2d Cir. 2013) (summary order) (dismissing ineffective assistance claims based on Defendant's argument that "pre-trial counsel's conflicts caused them to not pursue a pre-indictment plea or cooperation agreement" because there was no evidence in the record that one might have been offered).

Furthermore, while it is true that Mr. Lemay does not need to prove "that the negotiation of a plea bargain would have been successful, the strategy must nevertheless 'possess [] sufficient

substance to be a viable alternative.' " *Eisemann*, 401 F.3d at 110 (quoting *Winkler*, 7 F.3d at 309). There is nothing in the record before the Court to demonstrate that a cooperation or plea agreement was "a plausible alternative defense strategy or tactic." *Malpiedi*, 62 F.3d at 469.

The Court acknowledges that the testimony of Mr. Lemay directly conflicts with the testimony of Mr. Creizman, Ms. Madrigal, and Mr. Agostino with respect to whether they discussed the option of Mr. Lemay cooperating with the Government or pleading guilty. *Compare* Lemay Aff. at ¶¶ 3, 18, 19, *with* Creizman Decl. ¶¶ 17-19, *and* Agostino Decl. ¶¶ 10(c)-(d), *and* Madrigal Decl. ¶¶ 10, 21-26. Yet, there is absolutely no contemporaneous evidence in the record that supports that idea that Mr. Lemay was interested in pleading guilty or cooperating with the Government. In fact, Mr. Lemay does not state anywhere in his affidavit that he had any desire or willingness to admit guilt, plead guilty, and/or cooperate with the Government. And, there is compelling testimony from Ms. Madrigal, Mr. Creizman, and Mr. Agostino that Mr. Lemay at all times denied any criminal wrongdoing and proclaimed his innocence which prevented him from pleading guilty. *See* Madrigal Decl. ¶¶ 10, 24; Creizman Decl. ¶ 18; Agostino Decl. ¶ 10(c); Evid. Hr'g Tr. 63:18-22, 193:4-23. Moreover, even if Mr. Lemay wanted to cooperate, as he now suggests may have been the case, there is evidence that he maintained always that he had no helpful information to provide prosecutors concerning Mr. Mana, or others. *See, e.g.*, Madrigal Decl. ¶¶ 10, 24; Creizman Decl. ¶ 18; Agostino Decl. ¶ 10(c); Evid. Hr'g Tr. 63:18-22, 193:4-23.

Furthermore, there are persuasive contemporaneous documents in the record, pre-verdict and pre-motion, that demonstrate that the topic of pleading guilty or cooperating with the Government was discussed and that Mr. Lemay was either not able or willing to pursue, or not interested in pursuing discussions. For example, in an email exchange between Mr. Creizman and Mr. Lemay, dated August 12, 2023, in response to Mr. Lemay asking Mr. Creizman why the

Government was going after him instead of other people, Mr. Creizman replied "I think they want to get Moishe and *they thought you might cooperate against them*." ECF No. 244, Ex. 1 (emphasis added). Additionally, in an email from Mr. Lemay, also dated August 12, 2023, Mr. Lemay raises various thoughts and concerns with respect to his case to Mr. Creizman and Mr. Lemay explicitly states, "I was never offered a Plea Bargain *even I would had nothing to plea* [sic]." ECF No. 244, Ex. 2 (emphasis added). This note written by Mr. Lemay himself strongly suggests that a plea bargain was never offered by the Government, but that even if a plea bargain had been offered, there was nothing Mr. Lemay to offer in exchange for pleading guilty. Thus, while there are conflicts between the post-hoc testimony of Mr. Lemay in support of his motion and the testimony of each of his various counsel and the contemporaneous evidence, the Court found the testimony of Mr. Agostino and Mr. Creizman at the evidentiary hearing to be credible. Moreover, the Court takes Mr. Lemay's own contemporaneous words at face value: Even if he had been offered a plea bargain (which there is no evidence that he was), he was not interested because he would have had "nothing to plea [sic]." ECF No. 244, Ex. 2.

In light of the credible testimony and contemporaneous pre-trial documents reflecting Mr. Lemay's view that he had nothing to plead guilty to, the Court finds that attempting to negotiate or cooperate with the Government was not a viable alternative and thus failure of counsel to pursue an agreement with the Government was not a "lapse in representation" sufficient to support an ineffective assistance of counsel claim. *See Armienti*, 313 F.3d at 811, 815 (rejecting ineffective assistance claim because there was no evidence that defendant "had any information to offer," there was no "evidence that the prosecution was interested in obtaining information from [defendant]," and evidence of defendant's refusal to pursue a plea agreement all "negate the notion that it was a plausible alternative"); *see also Pepe*, 542 F. App'x at 55 ("it is by no means clear

that [defendant] would have accepted a pre-indictment plea bargain if one had been offered, given his repeated claims of innocence and eventual decision to go to trial").

In sum, Mr. Lemay has not carried his burden of demonstrating that either of his former counsel labored under an actual conflict and that a lapse in representation resulted from the purported conflict, *Iorizzo,* 786 F.2d at 58, to support vacating the jury verdict based on a claim of ineffective assistance of counsel.

### B.  Potential Conflict

As the Court explained above, Mr. Lemay has not clearly articulated whether his motion is premised on a claim that Mr. Agostino and Mr. Creizman labored under an actual conflict or a potential conflict.  Nonetheless, for the sake of completeness, the Court briefly addresses the potential conflict standard as well.

To demonstrate an ineffective assistance of counsel claim based on a potential conflict of interest, a defendant must demonstrate "both deficient performance by counsel and prejudice, under the standard established in *Strickland.*"  *John Doe No. 1*, 272 F.3d at 125.  Here, even if the Court assumed that Mr. Lemay's allegations sufficiently demonstrated a potential conflict and deficient performance by Mr. Agostino and/or Mr. Creizman, Mr. Lemay has not even approached the line of establishing that the conduct by his former counsel resulted in prejudice as required under *Strickland*.  466 U.S. at 694.

To carry his burden under the *Strickland* standard, Mr. Lemay must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*  Mr. Lemay's motion does not actually provide any substantive argument, let alone evidence, that demonstrates that but for counsel's alleged errors, the result of the proceeding would have been different.  Indeed, having presided over the nine-day trial and

listened to the testimony and assessed the credibility of the witnesses, the Court concludes that there is ample evidence to support the jury's verdict convicting Mr. Lemay.   Thus, to the extent Mr. Lemay is attempting to assert an ineffective assistance of counsel claim under the premise of a potential conflict, his motion fails.

### C. Miscellaneous Arguments

In addition to arguing an ineffective assistance of counsel claim based on his former counsel's alleged conflicts of interest and specifically counsel's failure to seek a plea or cooperation agreement on his behalf, Mr. Lemay haphazardly challenges three strategic decisions made by his counsel in connection with his trial.  Mr. Lemay challenges: (1) Mr. Agostino's choice to hire FTI Consulting, (2) Mr. Creizman's choice to participate in a mock trial, and (3) Mr. Creizman's cross-examination of Rami Haim at trial.

First, Mr. Lemay asserts in his motion and supporting affidavit that Mr. Agostino hired FTI consulting to help with Mr. Lemay's case after Mr. Lemay expressed that he did not believe that FTI Consulting was the right company.  Def. Mem. at 8.  Mr. Lemay claims he did so because "Bryan Scarlatos referred them" and so Mr. Agostino had to hire FTI.  Def. Mem. at 8; *see also* Evid. Hr'g Tr. 19:17-22.  Next, and for the first time, at the evidentiary hearing, counsel for Mr. Lemay questioned Mr. Creizman on the mock trial that was conducted in preparation for trial.  *See* Evid. Hr'g Tr. 136:24-25-141:6, 163:6-25-176:19.[4]  Finally, Mr. Lemay's motion states that Bruce Fischman sent Mr. Creizman possible cross-examination questions for trial witnesses.  Def. Mem. at 9.  At the evidentiary hearing, counsel for Mr. Lemay expanded this complaint by questioning

---

[4] The Court notes that this allegation is not mentioned in Mr. Lemay's Rule 33 motion or in his affidavit in support of his motion.

the quality of Mr. Creizman's cross-examination at trial of Mr. Rami Haim. *See* Evid. Hr'g Tr. 123:12-25-132:14.

These vaguely and inconsistently raised allegations are insufficient to support Mr. Lemay's Rule 33 motion because they are completely untethered from any argument or analysis under any of the applicable standards for an ineffective assistance of counsel claim based on a conflict of interest. On this motion, Mr. Lemay bears the burden of demonstrating that these allegations amount to either (1) "deficient performance by counsel" that caused prejudice to Mr. Lemay under *Strickland*, *see John Doe No. 1*, 272 F.3d at 125, or (2) a lapse in representation, *i.e.* a strategy that could have been pursued, but was not due to the conflict, under *Cuyler*. 446 U.S. at 349. Mr. Lemay's motion does not explain how these three indiscriminately raised complaints could possibly justify vacating the jury's verdict under the applicable legal framework.

## CONCLUSION

This Court's Individual Rules of Practice in Criminal Cases state "[w]henever defense counsel has received, or will receive, a benefactor payment that subjects counsel to a conflict of interest, he or she must immediately inform the Court and request a *Curcio* hearing." *See* Individual Rules of Practice in Criminal Cases Rules 2(A). The failure of Mr. Agostino, Mr. Creizman, and Ms. Madrigal to follow this Court's Individual Rules crippled the Court's ability to inquire at the outset of the case into the belatedly raised allegations of conflicts, hold a *Curcio* hearing, and resolve this issue prior to trial.

That said, Mr. Lemay waited until long after the jury spoke to raise with the Court for the first time his arguments that his former counsel were conflicted or otherwise ineffective. Even if the Court looks past the untimely nature of Mr. Lemay's claim, under the standards governing a Rule 33 motion rooted in a claim of ineffective assistance of counsel, the Court concludes that Mr.

Lemay has not carried his burden of demonstrating that the jury's verdict should be vacated. Accordingly, IT IS HEREBY ORDERED THAT Defendant's Rule 33 motion is DENIED.

The Clerk of Court is respectfully requested to close the motion pending at docket entries 239 and 270.

**SO ORDERED.**

Date:  **January 2, 2026**
       **New York, NY**

                                                         **MARY KAY VYSKOCIL**
                                                    **United States District Judge**